2003 VT 45

# In re Appeal of Martha and Ira Jackson (Town of Waitsfield, Appellant)

[830 A.2d 685]

No. 02-236

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed May 9, 2003

*Amanda S. E. Lafferty* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Appellant.

*Christina A. Jensen* of *Lisman, Webster, Kirkpatrick & Leckerling, P.C.*, Burlington, for Appellees/Cross-Appellants.

¶ 1.  **Dooley, J.** This case arises from the modification of a barn, sited within the setback distance from a watercourse under zoning of the Town of Waitsfield (the Town), and owned by Ira and Martha Jackson (the Jacksons). The barn modification was initially permitted by the Town, but the owners added another floor to the modified barn without seeking an amendment to the permit. After the Town Zoning Board of Adjustment (ZBA) refused to issue a permit for the expanded barn, and ordered that the upper story be removed, the environmental court reversed the standard used by the ZBA, allowed the owners to litigate whether the watercourse was a stream, and held that it was. Both the owners and the Town appeal, contesting the parts of the environmental court decision adverse to them. We vacate the environmental court decisions and remand for issuance of a permit.

¶ 2.  Although the foregoing states the case, the primary question presented is whether municipalities may authorize zoning boards of adjustment to grant special exceptions to deviate from area restrictions, and if so, whether there are minimum statutory standards that apply. We find that the so-called area special exception is a type of conditional use permit, and, therefore, the statutory criteria for conditional uses apply.

¶ 3.  The Jacksons own 7.3 acres of land along Shepard Brook in Waitsfield. The property contains an old mill pond and an artificially-created watercourse that once diverted water from Shepard Brook to the pond, through a mill, and back to the brook. The mill is now long gone. The upstream segment of the watercourse — from the brook to the pond — has been replaced by a pump and pipeline that the Jacksons sometimes use to feed the pond. Otherwise, the pond fills from precipitation events, surface flow, groundwater, and agricultural runoff from an adjacent property. Overflow from the pond intermittently drains through the downstream segment — the former millrace[1] — which runs past a barn,

---

[1] As can be expected in a dispute of this kind, the sides characterize the watercourse consistent with their position. For the Town, it's a stream as specified in the zoning ordinance.

though a driveway culvert, and then back towards Shepard Brook. It is disputed how much and how often water runs through the millrace, and whether the water dissipates before it reaches the brook.

¶ 4. The Jacksons' property is located in Waitsfield's Agricultural-Residential zoning district. The Town zoning ordinance requires that all structures in this district be set back fifty feet from the top of a stream bank, or seventy-five feet from the edge of the stream where there is no identifiable bank. Town of Waitsfield Zoning Ordinance, Art. III, § 3(D) (1995). In 1998, the Jacksons applied to the Waitsfield Zoning Board of Adjustment for a permit to rebuild and enlarge the barn, one end of which sits just twelve feet from the millrace. The proposed enlargement would be no closer to the stream than the footprint of the existing barn. Although the Jacksons contested at the time whether the millrace was a stream for purposes of Art. III, § 3(D), they also asked the ZBA to vary the stream setback requirements under a special provision authorizing the ZBA to do so "[i]f the applicant can demonstrate that setback of the structure less than the above standard will be accomplished in a manner which will not adversely affect water quality or scenic beauty." Town of Waitsfield Zoning Ordinance, Art. V, § 9(A). After providing public notice and a hearing, the ZBA varied the stream setback under the ordinance. It issued a permit authorizing the Jacksons to reconstruct the barn using salvaged materials, and to expand it from a 30' x 18' x 24' shed/barn into a 30' x 30' x 24' combined barn, garage, and storage facility. The permit expressly limited the reconstruction and enlargement of the barn to the plans submitted by the Jacksons on September 29, 1998. Additionally, four conditions were included in the permit to protect water quality and scenic beauty. The Jacksons did not appeal the permit, and it became final pursuant to 24 V.S.A. §§ 4471, 4472(d).

¶ 5. Sometime thereafter, the Jacksons changed their minds about the barn's design. Their architect discussed these changes with the Town zoning administrator by telephone. The Jacksons claim that the zoning officer orally advised the architect that the Jacksons could amend their permit after construction by submitting as-built plans and payment of an additional fee, although the Town disputes this. The Jacksons then went ahead with construction. The rebuilt barn followed the 1998 permit requirements on the ground floor, but the Jacksons added a full second story housing a half-court for indoor tennis and basketball, a balcony, and a bath plumbed into an existing septic system. They used all new

---

For the Jacksons, it's a ditch. We have employed another descriptive term to avoid taking sides on the question.

materials, added ten feet in height, and doubled the permitted size of the barn to 1,800 square feet (30' x 30' x 34').

¶ 6. After construction, the Jacksons applied for a revised zoning permit for the as-built structure. The zoning administrator denied the request for a permit, and served notice that the barn was in violation of the 1998 permit. The Jacksons then appealed to the ZBA, contesting the denial of the permit and the notice of violation on the grounds that the millrace was not a stream, and therefore there was no basis to deny the permit or to enforce the 1998 permit conditions. Before it heard the case, the ZBA informed the Jacksons that because the original barn violated the stream setback requirement, it was a noncomplying structure and a nonconforming use under 24 V.S.A. § 4408. Therefore, the ZBA warned, in order to receive approval for the as-built barn, the Jacksons had to also apply for a variance pursuant to the zoning ordinance's provisions for noncomplying structures, Town of Waitsfield Zoning Ordinance, Art. V, § 11(B), and a conditional use permit pursuant to the provisions for nonconforming uses, *id.* Art. V, § 11(A). The ZBA acknowledged that it had not required this review when it approved the rebuilding of the barn in 1998. The Jacksons applied as requested "under protest."

¶ 7. Subsequently, in August 2000, the ZBA upheld its 1998 decision that the millrace was a stream. It concluded, however, that its 1998 decision to apply the Town's stream setback exception, Art. V, § 9, without requiring general variance and conditional use review, did not comport with state law. The ZBA denied the permit application primarily because it did not meet the requirements of a variance under Art. IV, § 4, which incorporates the variance standards of 24 V.S.A. § 4468(a). It upheld the administrator's determination that the Jacksons were in violation of their 1998 zoning permit, and ordered the Jacksons to remove all portions of the barn that did not comply with the September 29, 1998 plans.

¶ 8. The Jacksons appealed the ZBA's rulings to the environmental court. Meanwhile, the Town sought an injunction from the environmental court to enforce the ZBA's order requiring the Jacksons to remove the noncompliant construction. The two cases were consolidated, and shortly thereafter the parties filed cross-motions for summary judgment. By the time of this appeal, both sides had fundamentally changed their legal position from that in the 1998 proceeding. The Jacksons, who were originally willing to accept the Town's characterization of the millrace as a stream to obtain their permit, were now challenging this characterization. The Town ZBA, which originally ruled that the Jacksons must meet only the standards of the special provision in Art. V, § 9 of the zoning ordinance

to build in the stream setback, were now ruling that the Jacksons must additionally meet both variance and general conditional use standards.

¶ 9. On October 10, 2001, the environmental court ruled that, contrary to the Town's claims, the Jacksons were not precluded by 24 V.S.A. § 4472(d) from contesting whether the millrace was a stream. Next, the court held that the stream setback special exception was valid under 24 V.S.A. § 4407, and therefore ordered the ZBA to reconsider the Jacksons' application to revise their 1998 permit. Lastly, the court held that if a special exception was granted, no variance or conditional use permit would be required. Before remanding to the ZBA, the environmental court held a hearing on the merits to determine whether the millrace qualified as a stream for the purposes of the Waitsfield zoning ordinance. The court found that, although it was originally artificially created and although water flow is sometimes intermittent, the millrace is indeed a protected stream under the ordinance. This appeal followed.

¶ 10. On appeal, the Town argues that the Jacksons are precluded from contesting whether the millrace is a stream because they failed to appeal from the 1998 decision to that effect. Second, it argues that the environmental court erred in not requiring the Jacksons to obtain a variance and a conditional use permit, in addition to the special exception, to convert the barn because it was a nonconforming use within the stream setback.

¶ 11. In the decisions we are reviewing, the environmental court granted summary judgment finding no disputed issue of material fact. In reviewing a summary judgment ruling, we apply the same standard as the trial court and will affirm the grant of summary judgment "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 313, 779 A.2d 67, 70 (2001); V.R.C.P. 56(c).

¶ 12. We begin with the second issue raised by the Town because we conclude that it resolves this dispute. The Town argues that the court erred in holding that the Jacksons could receive a permit by passing only the special exception standard for stream setbacks contained in Art. V, § 9(A) of the ordinance, without showing entitlement to a variance and a conditional use permit under the general standards for these approvals in Art. IV, §§ 4 & 5 of the ordinance. There are actually two parts to the Town's argument: (1) since the barn is a nonconforming use and a noncomplying structure, Art. V, §§ 11(A) & (B) of the zoning ordinance require conditional use and variance review respectively; and (2) the zoning enabling act does not allow the Town to substitute a special exception review process for these general reviews. We take these issues

in reverse order because we believe the second issue represents the linchpin of this appeal.

¶ 13. Stated more generally, the issue is whether a municipal zoning ordinance may authorize a board of adjustment to "vary" or grant a "special exception" to specific requirements of the ordinance according to conditions set forth therein, and if so, what standards govern the issuance of such permits. The Waitsfield ordinance allows the ZBA to vary the fifty-foot stream setback requirement "[i]f the applicant can demonstrate that setback of the structure less than the above standard will be accomplished in a manner which will not adversely affect water quality or scenic beauty." Art. V, § 9. The environmental court labeled this provision as a "special exception" and held that it was valid generally under 24 V.S.A. § 4407 ("Any municipality may adopt zoning regulations that may include, but shall not be limited to, any of the following provisions . . . ."), and as an inherent power under 24 V.S.A. § 4401(b)(1) (authorizing municipalities to establish setbacks and other area restrictions).

¶ 14. The Town argues that the environmental court's decision was error and attacks its own ordinance[2] on the theory that the authority to grant special exceptions must be expressly delegated by the state legislature, and no such express delegation exists in Vermont given that the Legislature repealed the prior special exception provision in 1968 and has never reinstated the authority for municipalities to provide for special exceptions. See generally 24 V.S.A. §§ 3001-3027 (repealed 1967, No. 334 (Adj. Sess.), § 2, eff. Mar. 23, 1968). We conclude that the so-called special exception is but another name for a conditional use, which is expressly authorized under 24 V.S.A. § 4407(2).

¶ 15. This is primarily a dispute over terminology. The environmental court correctly distinguished the Waitsfield stream setback exception from a variance, as discussed in more detail below. See 3 K. Young, Anderson's American Law of Zoning § 20.03, at 416 (4th ed. 1996) ("[A] variance is authority extended to a property owner to use his property in a manner forbidden by the zoning enactment, while an exception allows him to put his property to a use which the enactment expressly permits.") (quotation marks and citation omitted). What the environmental court

---

[2] Primarily the Town is arguing that because the barn existed as a nonconforming use, the ordinance requires variance and conditional use approval for the barn reconstruction, in addition to the special exception review. That argument could be seen as one of ordinance construction only. However, the Town recognizes that Art. V, § 9 was drafted as the only review standard for construction within the stream setback. Thus, it ends up challenging its own intent and arguing that the intent behind the language could not be lawfully realized under the zoning enabling act.

failed to note, however, is that the term "special exception," which originated with the Standard State Zoning Enabling Act § 7 (1926) (providing the board of adjustment with the power to "hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance"), is synonymous with the modern term "conditional use," which refers to the same process. See *Hofmeister v. Frank Realty Co.*, 373 A.2d 273, 277 (Md. Ct. Spec. App. 1977) ("Whether the label employed . . . happens to be 'special permit,' 'conditional use,' 'special use,' 'use permit,' or 'special exception,' the type of relief described is the same.").[3]

¶ 16. Vermont has used both terms. Prior to 1968, Vermont used the term "special exception" from § 7 of the Standard State Zoning Enabling Act. See 24 V.S.A. § 3014 (1967) (a board of adjustment "may make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained"); *id.* § 3020(2) (a board of adjustment has the power "[t]o hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance"). These provisions were repealed and replaced by the Vermont Planning and Development Act, 1967, No. 334 (Adj. Sess.), § 1, eff. Mar. 23, 1968, which applied the term "conditional uses" to the same process. See 24 V.S.A. § 4407(2) ("Conditional uses. In any district, certain uses may be permitted only by approval of the board of adjustment . . . , if general and specific standards to which each permitted use must conform are prescribed in the appropriate bylaws . . . ."). We therefore reject the Town's contention that the Legislature has expressly repealed and never reinstated authority for municipal boards of adjustment to hear and decide so-called "special exceptions"; the Legislature merely changed the name of the process to "conditional uses."

¶ 17. As such, we agree with the environmental court that "special exceptions" are valid under state law, although we disagree with the court's reasoning. We conclude that special exceptions are governed by

---

[3] As suggested in *Hofmeister*, the early term "special exception" was replaced by "conditional use" to reflect the fact that "no 'exception' is made to the provisions of the ordinance in permitting such use; the permit granted is for a use specifically provided for in the ordinance . . . [when certain] conditions, legislatively prescribed, are also found." 373 A.2d at 277 (quotation marks and citations omitted); see also 3 E. Ziegler, et al., Rathkopf's The Law of Zoning and Planning § 61:9, at 61-20 (2003) (the term "special exception" is "a carryover from the early days of zoning" and has been replaced by the more accurate term "conditional use" in most modern zoning ordinances).

the specific requirements of 24 V.S.A. § 4407(2) rather than the general provisions of 24 V.S.A. § 4407.

¶ 18. We recognize that a good deal of confusion in this area is caused by legislative selection of the term "conditional *use*." As we explained in *In re Miserocchi*, 170 Vt. 320, 328, 749 A.2d 607, 613 (2000) (citing 7 P. Rohan, Zoning and Land Use Controls § 42.01[4], at 42-9 (1991)), there are two types of zoning restrictions — "use" restrictions, which limit the activities that may take place within a certain area, and "bulk" or "area" restrictions, which control setbacks and size, shape, and placement of buildings on a property. Thus, the implication of the Town's position is that a setback requirement cannot be the subject of conditional use review because the use of the land is not in issue. The zoning enabling statute makes clear, however, that conditional use review may apply to both use and area restrictions. Thus, specific conditional use standards may include requirements with respect to "minimum lot size" or "distance from adjacent or nearby uses." 24 V.S.A. § 4407(2). Indeed, we have recognized that a noncomplying structure, which is made noncomplying because it violates an area restriction, is also a nonconforming use. See *In re Letourneau*, 168 Vt. 539, 546, 726 A.2d 31, 36-37 (1998).

¶ 19. As we stated above, the environmental court correctly recognized that Art. V, § 9 did not establish a variance standard. Again, however, confusion is caused by the terminology employed, in this instance by the Town. Under Art. V, § 9 of the ordinance, the setback requirement "may be varied" by the Town of Waitsfield ZBA on meeting the standards in the section. The implication in the terminology is that the Town intended a special form of variance for buildings within a stream setback. If it had that intent, it could not lawfully implement it. The variance standards are statutory and cannot be expanded or modified by the Town. See 24 V.S.A. § 4468(a) (on finding that the statutory standards are met, the ZBA "shall grant variances, and render a decision in favor of the appellant"). The Town can, however, establish specific conditional use standards under 24 V.S.A. § 4407(2). We construe the ordinance section to give it effect. *In re Lashins*, 174 Vt. 467, 469, 807 A.2d 420, 423 (2002) (mem.).

¶ 20. Our holding means that this case is controlled by *In re White*, 155 Vt. 612, 618-20, 587 A.2d 928, 931-32 (1990). In *White*, the town adopted a conditional use regulation without requiring that the applicant comply with the general standards prescribed in the enabling act, 24 V.S.A. § 4407(2). Rather than invalidating the town ordinance, we held that "the statutory criteria still govern without further action by the town." *Id.* at 618, 587 A.2d at 931. Thus, the failure to include the

statutory general conditional use standards in the ordinance allowing structures within the setback from a stream means only that the statutory standards apply despite their absence. The Jacksons are required to meet those standards as well as the requirements of Art. V, § 9 of the ordinance.

¶ 21. We return to the Town's first argument with respect to the applicable standard for review of the Jacksons' barn modification. The Town argues that because the original barn violated the stream setback requirement in Art. III, § 3(D), the barn was a pre-existing noncomplying structure and nonconforming use and, under the ordinance's provisions regulating expansion of nonconforming uses and noncomplying structures, the Jacksons were therefore obligated to obtain both a variance and a conditional use permit. See 24 V.S.A. § 4408 (municipalities may regulate and prohibit expansion of nonconforming uses and noncomplying structures). The environmental court disagreed, holding that once an applicant obtains a special exception for a noncomplying structure, then the structure is no longer in violation of the Town bylaws since it conforms to the alternative standards written into the ordinance. Thereafter, the court concluded, provisions for expansion of a noncomplying structure no longer apply because the structure is now a complying one and because it is complying it is not a nonconforming use.

¶ 22. Although we treat this argument on its merits, we note at the outset that the Town is in the difficult position of arguing that the Jacksons cannot modify an existing building within the stream setback, but could build an entirely new one. The Town's argument stretches nonconforming use regulation well beyond its purpose. Looking at the merits of the argument, however, the dispute centers around the need for a variance. As we have held above, building within the stream setback requires a conditional use permit, meeting both general and specific standards. The Town argues that because the barn was a noncomplying structure, modification of an existing building also requires a variance and the Jacksons cannot meet the statutory variance standards.

¶ 23. We accept that before the Jacksons received a permit to modify the barn within the stream setback, the barn was a nonconforming use, because it existed prior to the enactment of the restrictive ordinance. See *In re Lashins*, 174 Vt. at 470, 807 A.2d at 424-25 (a use preexisting the enactment of a zoning ordinance is a "nonconforming use" if it does not comply with the zoning ordinance and the owner has not obtained a conditional use permit); *Town of Brighton v. Griffin*, 148 Vt. 264, 269, 532 A.2d 1292, 1294 (1987) (same). As we explained above, the permit to modify the barn was a form of conditional use permit. We agree with the

environmental court that if and when a conditional use permit issues, the barn would cease to be a nonconforming use or noncomplying structure because the barn then complies with all applicable zoning regulations. See 24 V.S.A. § 4408(a)(1), (2) ("nonconforming use" means a pre-existing use of a land or a structure which does not comply with all zoning regulations; "noncomplying structure" means a pre-existing structure or part thereof not in conformance with the zoning regulations). The zoning ordinance provision requiring a variance for the modification of a noncomplying structure no longer applies. There is no need for the Jacksons to obtain a variance.

¶ 24. Apparently because the Town disagrees with the court's ruling, the Town has characterized the ruling too narrowly. The Town asserts that the court ruled that no variance was necessary because the Jacksons received a special exception permit in 1998 making lawful the originally-proposed modification of the barn. In fact, the 1998 decision is irrelevant on this point. The owner of a noncomplying structure within a stream setback may apply for a conditional use permit to modify the structure, which, if granted, will make the modification lawful and obviate the need for a variance. For the Jacksons, the relevant conditional use permit is the one they may receive for the new two-story barn design.

¶ 25. We turn now to the consequences of holding that general conditional use standards apply to the application to further enlarge the barn within the stream setback. There are five required general conditional use standards. The ZBA must find that the proposed conditional use will not "adversely affect: (A) The capacity of existing or planned community facilities; (B) The character of the area affected; (C) Traffic on roads and highways in the vicinity; (D) Bylaws then in effect; or (E) Utilization of renewable energy resources." 24 V.S.A. § 4407(2). The ZBA did review the barn modification against these standards, albeit for the wrong reason, and found that the proposal met all the standards except (D). It found noncompliance with (D) because the proposal needed a variance, a decision we have found to be erroneous. Thus, the ZBA has found that the proposal met the applicable general conditional use standards, and the Town has not sought de novo review of that determination.[4]

---

[4] Section 4472(a) of Title 24 provides that the "interested person" which appeals is entitled to "a de novo trial in the environmental court." In fact, the Jacksons, as appellants in the environmental court, listed seven questions for the appeal. Some they raised as legal issues; others as factual issues. We have never decided the extent to which parties can appeal legal determinations to the environmental court without also seeking a de novo determination of the facts upon which the legal questions are based. Neither party has asked us to do so here.

¶ 26.  Similarly, the ZBA found that the new barn modification proposal met the specific conditional use standards set out in Art. V, § 9 of the zoning ordinance. That is, the ZBA found that the proposal would not adversely affect water quality or scenic beauty. Again, the Town has not challenged these findings nor sought de novo review of them. The environmental court did order a remand to consider whether the as-built barn met the standards of Art. V, § 9. In light of the ZBA's findings, we believe the sole purpose of the remand should be to issue the permit.

¶ 27.  Because the ZBA has concluded that the proposal meets both the general and specific conditional use standards, there are no longer any genuine issues of material fact that would prohibit issuance of a permit. The ZBA attached special conditions in the 1998 approval of the barn modification, and these remain in effect. There is no indication in the ZBA decision that additional conditions are necessary. Thus, the Jacksons are entitled to a permit on the current record.

¶ 28.  In light of our disposition of the second issue raised by the Town, we need not fully answer the first issue raised by the Town — whether the Jacksons can litigate whether the millrace is a stream — or the issue raised by the Jacksons — whether the court erred in finding that the millrace is a stream.[5] Our conclusion that the Jacksons are entitled to a permit for the as-built barn obviates any necessity to consider alternative arguments that would reach the same objective.[6]

¶ 29.  We add only that we are not holding that the Jacksons can collaterally attack the permit they received in 1998 in order to avoid an

There has been no objection in this case to acceptance of findings of the ZBA except with respect to whether the millrace is a stream, a factual issue decided anew by the environmental court. Consistent with the apparent position of the parties, we do not believe an independent review of the general conditional use standards by the environmental court is necessary.

[5] The Jacksons also argued that the environmental court erred in failing to consider four of its appeal issues. We believe that three of these issues were addressed by the court. The fourth was phrased as whether "the Town [is] bound by the Zoning Administrator's approval of the modifications of the barn." This is a reference to their claim to the ZBA that the Town was equitably estopped by a statement of the zoning administrator to the Jacksons' architect that they could expand the barn without a new permit. The ZBA rejected this claim as factually and legally unsupported. It is unclear whether the Jacksons expected a de novo trial on this issue or review of the legal position of the ZBA. In any event, the environmental court did not address the issue. Like the issue of whether the millrace is a stream, we find it unnecessary to reach this issue in light of our disposition.

[6] Because we are not deciding whether the Jacksons can challenge the ZBA's finding that the millrace is a stream, or whether the environmental court's finding to the same effect can be affirmed, we vacate the environmental court's decisions on these points. If there are further proceedings with respect to the structure, these issues can be raised anew to the extent that they are not resolved by this opinion.

enforcement action for violation of the terms of that permit. Section 4472(d) provides that the failure of an interested person to appeal a ZBA decision means that the person is bound by the decision "and shall not thereafter contest, either directly or indirectly, . . . such decision of the board in any proceeding, including, without limitation, any proceeding brought to enforce this chapter." 24 V.S.A. § 4472(d). We have consistently refused to allow a party to challenge the validity of a permit or permit conditions in subsequent enforcement proceedings. See *City of S. Burlington v. Dep't of Corr.*, 171 Vt. 587, 591, 762 A.2d 1229, 1232 (2000) (mem.) (§ 4472 precludes collateral attack even where the zoning body's authority to impose permit conditions is challenged under doctrine of sovereign immunity); *Town of Charlotte v. Richmond*, 158 Vt. 354, 357, 609 A.2d 638, 639-40 (1992) (§ 4472 precludes later assertion of affirmative defenses); *Town of Sandgate v. Colehamer*, 156 Vt. 77, 85, 589 A.2d 1205, 1210 (1990) (§ 4472(d) applies to defenses raised in enforcement proceedings); *Phillips Constr. Servs., Inc. v. Town of Ferrisburg*, 154 Vt. 483, 485, 580 A.2d 50, 51 (1990) (§ 4472 applies even if a zoning permit is alleged to have been void as ultra vires); *Levy v. Town of St. Albans Zoning Bd. of Adjustment*, 152 Vt. 139, 142, 564 A.2d 1361, 1363-64 (1989) (§ 4472 applies even when a zoning permit is alleged to have been void ab initio). The approved description of the project, as contained in the permit application or attachments, is necessarily one such unchallengeable permit condition. See *In re Duncan*, 155 Vt. 402, 410, 584 A.2d 1140, 1145 (1990) (upholding a permit condition that approved a project "pursuant to the plans, specifications, and site plans admitted into evidence").

¶ 30. Although we leave to another day whether an applicant can challenge the factual basis for a granted permit in the course of the application for a new permit, we address this point for two reasons. First, the Town's enforcement action remains open, and the issue of whether the Jacksons violated their permit remains live.[7] Second, the Jacksons have continued to argue that the grant of the special exception permit in 1998 made the barn a permitted use and that they can expand that use in any way authorized in the Agricultural-Residential zoning district.

¶ 31. Acceptance of the Jacksons' argument would eviscerate conditional use review, allowing an applicant to apply for one building and go through review under the conditional use standards for that design,

---

[7] The environmental court severed the enforcement action from the appeal of the permit denial, ruling solely on the permit appeal. The parties subsequently stipulated to place the enforcement action on inactive status pending resolution of the appeal to this Court of the permit denial. We note that the remedies authorized in enforcement actions include financial penalties, as well as injunctions. See 24 V.S.A. §§ 4444, 4445.

and build a very different building that may be judged differently under the conditional use standards. Alternatively, conditional use review would have to be expanded to cover any building the applicant could possibly build, and not what was actually proposed.

¶ 32. In any event, the permit by its terms is limited to construction in accordance with the application, and the application was for a one-story building only. The barn as built went beyond the permit authorization and could not be considered a permitted use without new conditional use review involving an amendment to the existing permit or a new permit. Therefore, the barn as built will become lawful only when the ZBA issues the permit that we have required in this opinion.

*The decisions of the environmental court are vacated. The appeal of Ira and Martha Jackson to the environmental court is remanded to the Town of Waitsfield Zoning Board of Adjustment for issuance of a conditional use permit in accordance with the provisions of this opinion.*