**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of William Smith      }
                                    }
                                    }      Docket No. 263-12-02 Vtec
                                    }
                                    }

Decision and Order

Appellant William Smith appealed from a decision of the Development Review Board (DRB) of the Town of Richmond affirming the Zoning Administrator's June 27, 2002 response to Appellant's and other neighbors' complaints alleging zoning violations at Appellee Chittenden County Fish & Game Club, Inc. Appellant and interested persons Winifred Doan, May Beth Doyle, Michael Giangreco, Fran Huntoon, Timothy Kenney, Jennifer Kenney, Robert Low, Elizabeth Low, William Minard, Susan Minard, Durand Road, and Ellen Ward are represented by Daniel P. O' Rourke, Esq.; Appellee Chittenden County Fish & Game Club, Inc. (Appellee Club) is represented by Paul S. Gillies, Esq. The Town is represented by Mark L. Sperry, Esq.; the Town did not participate in the trial or file any post-hearing memorandum.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, on Questions 1, 5, 6, and 8 of the Statement of Questions, which remained after the Court's decision on partial summary judgment. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Appellee Club owns a 49-acre parcel of land in the Agricultural/Residential zoning district, on which it operates gun and archery shooting ranges, fishing ponds, hiking trails, tent and trailer campsites and a parking area to serve these functions. Appellee Club's facility has been in existence since at least 1933, well before the enactment of the Town's first zoning regulations in 1969. Firearms have been used at Appellee Club's shooting range since before 1969.

For the purposes of this analysis, we will assume that the zoning regulations establishing the Agricultural/Residential zoning district, including the current list of allowed uses, have not changed in pertinent part since the adoption of zoning in Richmond in 1969, as no evidence was presented at trial to the contrary. As of the adoption of those regulations in 1969, Appellee Club's use of the land became a non-conforming use for two reasons: first, because the use category of ' private club' is not a use category allowed at all in this zoning district; and second, because the use category of ' outdoor recreation facility' requires conditional use approval.

The use category of ' private club' is defined in terms of having " buildings and related facilities" and by the club's nonprofit, dues-paying membership status. Although Appellee Club does not operate a clubhouse, the roofed shooting shelters do fall within the definition of ' building' in the Richmond zoning regulations, and it undoubtedly has related facilities. Appellee Club therefore falls within the use category of ' private club' for the purposes of this analysis; as such, it is a non-conforming use in the Agricultural/Residential district.[1]

The use category of ' outdoor recreation facility' is not as clearly defined. The term " recreation facility" is defined in the definitions section simply as " a place designed and equipped for sports or leisure-time activities." Both indoor and outdoor recreation facilities are allowed in the three commercial zoning districts (Gateway Commercial, Commercial, and Industrial/Commercial). By

contrast, the only recreational use category allowed in the four residential zoning districts (Agricultural/Residential, High Density Residential, Residential/Commercial and Mobile Home Park) is " outdoor recreation facility or park," and then only if approved by the DRB as a conditional use with appropriate conditions, which could regulate hours of operation, levels of noise, and other regulated characteristics. Comparing the ' outdoor recreation facility' use category with the other uses allowed in the various residential districts, it is not clear whether the drafters of the regulations contemplated that this definition could include such noise-generating outdoor leisure-time activities or sports as motorcycle or snowmobile trails or racecourses, or automobile racing around a track, or shooting ranges, as well as quieter types of outdoor recreation, in those residential districts. However, this Court must apply the regulations as they are written, until or unless revisions are proposed.

The uses operated by Appellant Club at this property do fall within the use category of ' outdoor recreation,' a conditional use in the Agricultural/Residential zoning district. Although the outdoor recreation uses are allowed to continue in their pre-existing, non-conforming status without obtaining conditional use approval they remain non-conforming until or unless they obtain conditional use approval from the DRB. See, In re Appeal of Jackson, 175 Vt. 304, 312; 2003 VT 45, ¶ 23 (2003).

Under § 4.7 of the Richmond Zoning Regulations, an historically seasonal or intermittent non-conforming use is assessed at the historical rate to determine both abandonment and the extent of allowed continued use. Franklin County v. City of St. Albans, 154 Vt. 327, 331 (1990) (" If the nonconforming use was not abandoned, as the trial court concluded, then resumption of activity at the jail to pre-[zoning ordinance] levels, so long as it was within the range of the previous activity and not greater than the maximum activity within that [previous] range, was not an expansion as a matter of law." (Emphasis added)).

Under § 4.7 of the Richmond Zoning Regulations, a non-conforming use may not be increased or expanded, except that up to a 25% increase in physical characteristics[2] may be allowed if both it and its site plan are approved[3] by the now-DRB. Under § 4.7, a non-conforming use that is abandoned for more than a year may not be resumed.

As the Vermont Supreme Court recognized in In re Casella Waste Management, 175 Vt. 335, 337-38, 2003 VT 49 (2003), citing In re Gregoire, 170 Vt. 556, 559 (1999)(mem.), one of the primary goals of zoning is to eliminate nonconforming uses, yet municipalities in Vermont have authority under the state zoning enabling legislation to adopt regulations that allow for the expansion of a nonconforming use, with approval of the municipal board, under carefully regulated circumstances. Such regulations have the advantage of allowing the municipal board to assess the probable effects of the expansion, and to impose conditions to protect nearby landowners from injury caused by the expansion. In re Casella Waste Management, 175 Vt. at 341.

The shooting range on Appellee Club's property is located near the road on which are located several of the Appellants' residences. The local topography is sloped towards the road, which has the effect of reflecting sound back towards the Smith and Giangreco residences.

As of the adoption of zoning making the then-existing uses on this property nonconforming, from approximately the fall of 1971 until at least the late spring of 1997, there was very little weekday use of the shooting range. Throughout the 1970s and 1980s there was minimal or no winter use of the shooting range and the access to the shooting range and parking area was not plowed.

In the winter of 1993-1994, the shooting range at the facility was used on only two weekend days out of the whole winter. By contrast, in the winter of 2001-2002, the shooting range at the facility

was used on at least 28 of the 30 weekend days that were monitored by the neighbors in that winter.

Until the 1996 or 1997 summer season, Appellee Club had maintained a caretaker at the facility from Memorial Day to Labor Day. One of the caretaker's responsibilities was to enforce the club's own rules prohibiting use of the facility after hours. During the years when the caretaker was present at the facility, there were more after-hours shooting violations of the club's own rules in the off-season, that is, after Labor Day or before Memorial Day, than there were when the caretaker was present. Since a caretaker has no longer been maintained at the facility, after-hours shooting violations of Appellee Club's own rules have increased. As Appellee Club has never applied for or received approval from the DRB under § 4.7 or § 5.5, these in-house rules have never been incorporated in a permit and therefore cannot be enforced by the Town as a zoning permit violation[4].

As of the fall of 1998, and continuing at least into 2003, the use of the existing shooting range had at least doubled, and may have increased by as much as four or five times, as compared with the amount of shooting that had existed in 1971 and through the 1980s. It had increased so that there was much more weekday use of the range, so that the extensive weekend use of the range was more constant and less intermittent, and so that there was more fall and winter use of the range.

The three former shooting shelters at the range had deteriorated or entirely collapsed by the late 1990s. These shelters had backs and sides, as well as roofs. This enclosed construction helped muffle the sound reaching the neighbors from the shooting. In the late 1990s the old shelters were removed and three larger shooting shelters were built. One of the former shelters was replaced within a year after its removal; the other two were replaced after more than a year had elapsed. The new shooting shelters have roofs, but no backs or sides. They are larger than the old ones; that is, they shelter more shooting positions from inclement weather. There were more shooting stations in place at the range by 1998 than there had been even in the late 1980s.

Prior to 2001, no toilet facilities were in place at the shooting range. In 2001, a portable toilet was added to the shooting range facilities.

As of the May 2002 zoning permit application, since the adoption of zoning in 1969, Appellant Club had made nineteen building, construction or earthmoving improvements to the facility, as listed on an attachment to that application. These included replacing three shooting shelter structures and ten shooting benches; adding earthen side berms to a target berm and to one end of the range fence, adding a target berm and increasing the height of target backstop berms; installing a chain link fence to control access to the rifle range and installing a gate to the ponds; improving the surface of the parking lot and some campsites; replacing and resurfacing existing bridges; and drilling a new well and enclosing it in a pump house. Appellant Club filed a permit application for zoning approval of these as-built improvements, which was granted by the Zoning Administrator on May 22, 2002 and became final without appeal.

Because the private club use is non-conforming in the district and the outdoor recreation use is non-conforming without conditional use approval from the DRB, these changes or improvements should have been reviewed by the DRB under either § 4.7 or § 5.5, or both[5], including site plan approval, rather than solely by the Zoning Administrator. Moreover, in the absence of conditional use approval, the shooting shelters that had collapsed and had remained collapsed for more than a year should not have been allowed to be rebuilt without an assessment under § 4.7 as to whether they had been abandoned. If not abandoned, the new construction required DRB approval of the use and the site plan as required under § 4.7 for non-conforming uses. Similarly, the increased hours and seasons of operation of the shooting range should have been assessed under § 4.7 as to whether the level of usage in 1969 had traditionally been intermittent, and what was the allowed level of continued use, as compared with an increase that would have required DRB approval of the use and the site plan as required under that section. Because the Zoning

Administrator acted on the application instead of referring it to the DRB, the improvements were 'improperly authorized as a result of error' by the Zoning Administrator.

It is important to note that the fact that no party appealed the Zoning Administrator's action and it became final only provides a permit for the as-built construction and earthmoving (' land development' ) structures and projects built by Appellee Club without a permit in the past. That improperly authorized permit did not somehow transform either the outdoor recreation use or the private club use into a conforming use for the future. Rather, the uses on the property are still non-conforming and must be analyzed under the applicable provisions for nonconformities in the current zoning regulations. See, 24 V.S.A. § 4303(13)-(16), as amended by 2004, No. 115, § 83 (nonconformity defined to clarify that it includes structures, uses and lots " improperly authorized as a result of error by the administrative officer[6]." ). Not only the listed construction and earthmoving improvements, but any other increases or expansions in the use itself after 1969, should have been applied for as changes to a non-conforming use under § 4.7 of the Zoning Regulations (which also requires site plan review unless waived by the DRB) and/or[7] as a conditional use under § 5.5 of the Zoning Regulations. Both types of approval require compliance with the noise performance standards in § 4.8 of the Zoning Regulations (see § 5.5.3(a)), but those performance standards are not self-executing; that is, they only apply to " any approval under these regulations," not to the operation of all uses in town. In addition, changes to the parking area required site plan review under § 6.1.6(a), regardless of whether or when the other types of approval were required.

Moreover, separate from the performance standards or any application for conditional use approval, all conditional uses must comply with the self-executing standards of § 5.5.2, which include, in § 5.5.2(a), the requirement that " obnoxious or excessive noise, . . . that is detectable at the boundaries of the lot shall not be generated."

Therefore, some findings and determinations in the Zoning Administrator's letter of June 27, 2002 are incorrect, and therefore the DRB's approval of it must be reversed in part, consistent with this decision.

Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 14, 15, 16, 17 and 19 of the letter are either correct statements of the facts or the law, or are quotations of the regulations. However, we note that as to Paragraph 7, while it may be correct that the buildings and structures comply with dimensional requirements and are not non-conforming structures, they are nevertheless structures used for a pre-existing non-conforming use, and must be analyzed as such.

As to the historical use of the shooting range and its in-house rules as to hours of operation in paragraphs 9 through 11 of the letter, as discussed above, although the facility's use category as a private club and as an outdoor recreation facility has not changed, the question of whether that non-conforming use has been increased or expanded must be analyzed with respect to whether it remains within the range of the previous activity.

As to the replacement of structures in paragraph 11 of the letter, as discussed above, two of the former shooting shelters should have been treated as having been abandoned under § 4.7, as they had collapsed and had not been replaced within a year. However, the permit issued by the Zoning Administrator allowing the construction became final without appeal. The fact that the structures themselves hold a permit allows them to remain in place. Nevertheless, the use remains a non-conforming one.

As to the construction of the earth berms in paragraphs 12 and 13 of the letter, while the Zoning Administrator was correct that Appellee Club could move its target areas around the shooting range without a permit, to the extent that the earthmoving involved in constructing the berms amounted to the extension of the use of land, it required a permit. However, the permit issued by

the Zoning Administrator allowing the berm construction became final without appeal. The fact that the berms themselves hold a permit allows them to remain in place. Nevertheless, the use remains a non-conforming one.

As to the changes to the parking area and whether they constituted a minor amendment to an approved site plan in paragraphs 18 and 20 of the letter, because no site plan had ever been obtained[8] for the preexisting parking area, the changes, however minor, should not have been treated as an amendment to a non-existent site plan. The work on the parking area should have obtained site plan review from the DRB under § 6.1.6(a), regardless of whether it or any other improvements also needed a conditional use permit under § 5.5 or review as a non-conforming use under § 4.7.

As to the lack of necessity for approval of a portable toilet discussed in paragraph 21, while it may be true that for an allowed (conforming) use the addition of a temporary portable toilet (for example, for an event such as a wedding at an old church or house without sufficient toilet facilities) would not require a zoning permit, for a non-conforming use the placement and maintenance of a portable toilet may represent the expansion of the hours, seasons or use of the facility. It therefore should have been analyzed with respect to whether the use of the shooting range remains within the scope of the previous activity.

Whether or not non-members used or now use the shooting range does not change the result in this appeal. If the use category of 'private club' were a conforming use category in the district, its substantial use by non-members might mean that it would need to be treated in a different use category, such as commercial, that might be non-conforming in the district. However, in the present case, it remains non-conforming as private club, regardless of whether it enforces its own rules about non-members, or whether its membership requirements are illusory, and we make no findings on that factual question. In addition, until or unless it obtains a conditional use permit as an outdoor recreation facility, it remains non-conforming for that reason as well.

As discussed above, Appellee Club has increased the scope and intensity of use of the shooting range at its outdoor recreation facility to such a degree that it requires review by the DRB under § 4.7 and/or[9] application for conditional use approval under § 5.5.

Finally, also as discussed above, to the extent the shooting range is a pre-existing non-conforming use, because it is within a conditional use category it is subject to the noise standards of § 5.5.2, which is self-executing for all conditional uses. It is not subject to the noise standards of § 4.8, either through § 5.5.3(a) or through § 4.7, unless or until application for approval is made under either of those sections.

We must interpret all the separate sections of the zoning regulations to harmonize them as much as possible, and in light of the state policy of defining and phasing out non-conforming uses. A contrary interpretation would have the anomalous effect of giving a non-conforming use more rights to expand than a conforming use in the district enjoys. A non-conforming use has the right to continue to exist and be maintained as it was when it became non-conforming; it does not hold an unlimited right to expand those elements of its operation (such as noise, lighting, or traffic) that caused the use category to be excluded from the district in the first place.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the Zoning Administrator's letter of June 27, 2002 was incorrect in part, as discussed above, and therefore it and the DRB's approval of it are hereby REVERSED and REMANDED for any further proceedings the parties may wish to take, consistent with this decision. This decision concludes this appeal; any future appeal of any action by the DRB would be a separate appeal receiving a separate docket number at the time of filing.

Dated at Barre, Vermont, this 20th day of December, 2004.

_____

Merideth Wright
Environmental Judge

---

**Footnotes**

1.     We do not in this appeal resolve the question of whether a municipality may regulate an entity as defined by its organizational status as a private club, rather than or as well as defined by the use it operates on a particular property (such as a clubhouse, banquet hall, shooting range, or snowmobile trail).

2.     We apply a common-sense interpretation of 'physical characteristics' as those characteristics of the use which can be perceived by an observer, such as floor area, height, traffic, noise or lighting, as opposed to characteristics which are not regulated, such as 'mere increase in volume of business.' Vermont Brick & Block, Inc. v. Village of Essex Junction, 135 Vt. 481, 483 (1977) .

3.     In this decision we do not need to determine whether this section may suffer in part from the same defect as the ordinance in In re Miserocchi, 170 Vt. 320 (2000), as it lacks standards for DRB approval of the up-to-25%-increase, although the ordinance does have standards for approval of the site plan. In any event, it is clear that more than a 25% increase in physical characteristics is not allowed.

4.     This Court has no jurisdiction to determine whether the evidence would or would not support a claim for private nuisance by the Appellants. See, e.g., Wild v. Brooks, 2004 VT 74; 15 Vt. L.Week 239 (August 13, 2004); and see 10 V.S.A. 5227(b).

5.     See footnote 1, above.

6.     The Vermont Supreme Court's decision in In re Appeal of Jackson, 175 Vt. 304, 312; 2003 VT 45, ¶23 (2003), decided before the clarifying statute, does not hold otherwise or conflict with the new statute. In that case, the property had been issued a proper permit and was therefore brought into conformity. That is, it was thereafter no longer nonconforming for lack of a permit. The analogy in the present case would be if Appellee submitted a conditional use approval and site plan application and obtained approval for its outdoor recreation use under §5.5, with appropriate conditions being imposed by the DRB.

7.     See footnote 1, above.

8.     The Zoning Administrator was correct that, absent any changes to the facility, one was not required.

9.     See footnote 1, above.