STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 121-10-16 Vtec

| | |
|---|---|
| Mahaiwe, LLC SP & CU | Docket No. 121-10-16 Vtec |

**Decision in On-the-Record Appeal**

In this on-the-record appeal, Mahaiwe, LLC ("Mahaiwe") appeals conditions included in a September 13, 2016 decision of the City of Vergennes Development Review Board ("the DRB") approving Mahaiwe's application for site plan review and conditional use approval to convert the Norton Grist Mill ("the Grist Mill") from mixed office and residential use to exclusively residential use, and to develop an accessory building for residential use.

Mahaiwe is represented by Colin R. Hagan, Esq. and David J. Shlansky, Esq.; the City of Vergennes ("the City") is represented by James H. Ouimette, Esq.

**On-the-record Scope of Review**

This is an on-the-record appeal. See 24 V.S.A. § 4471(b). As such, our review considers the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.).

**Background**

The Grist Mill and accessory structure are located in the Otter Creek Basin district in the City. Printed Case ("PC") at 3, 14. The property on which the Grist Mill and accessory structure are located has what the parties refer to as a "perimeter fence." Part of the fence is composed of vertical metal posts with two lengths of chain strung between them, and there are gaps between sections of fence and between the fences and the buildings. Id. at 22–25. Part of the fence, at the southwest corner of the property, is composed of metal posts bolted into the ground, top and bottom metal railings between them, and diagonal, metal lattice between the rails. Id. at 4, 6–8. In places, there are gaps between sections of fence, and between the fence and the buildings. Id. at 23–25. Photographs of the fence submitted to the DRB by Mahaiwe

show a drop of the ground surface immediately on the opposite side of the fence, with what appears to be water below.  Id.  At a public hearing on the application on appeal, Mahaiwe's representative refers to the project site as an "island."  Id. at 33, 35.  Mahaiwe's representative also compared the project site to waterfront sites in Boston and New York.  Id. at 39–40.  When a DRB member noted that the comparable Boston site was adjacent to "standing water," while the site proposed in this case is adjacent to "a waterfall with a 37-foot drop," Mahaiwe's representative responded, "Yeah," as if to confirm that this distinction is accurate.  Id. at 40.

**Procedural History**

Mahaiwe's initial application for site plan approval and a conditional use permit to convert the Grist Mill and accessory building into a ten-unit residence was denied by a DRB decision issued May 2, 2016.[1]  The denial was based on insufficient parking and on a finding that the existing fencing did not provide adequate "fall protection" in light of the potential presence of children on the property and the fact that the site is situated on the banks of a creek and waterfall with a 37-foot drop.

Mahaiwe did not appeal the May 2, 2016 decision, but instead filed a revised application on June 2, 2016 proposing a substantially similar project.  The new application calls for nine units, and also proposes—if the DRB requires—replacing the post and chain sections and closing the gaps in fencing with a lattice metal fence of the type already standing at the southwest corner of the property.  The application includes a page detailing a type of exterior light fixture to be used on the project.

On June 6, 2016, Mahaiwe's representative emailed an application supplement to the City's Zoning Administrator and the DRB.  The email notes that while the DRB had indicated the post and chain fence was inadequate, it had not provided a specific standard for fencing that would be considered adequate.  The email states that Mahaiwe is "willing to consider *any* [fencing] standards that [the DRB] wants to use, so long as we get them timely."

---

[1] The May 2, 2016 decision was not included in the record submitted by the City, but Mahaiwe included it in the printed case filed with its brief.  The City, in its reply, stipulated to including the decision in the record on appeal.

On July 13, 2016, Mahaiwe's representative sent a letter to the DRB. The letter explains that Mahaiwe is unaware of any regulations at the local, state, or federal level setting any specific standard for fencing that would apply to the property. The letter further notes that the Vermont League of Cities and Towns (VLCT) had suggested getting an opinion from the insurer of the property, and that the insurer had no recommendations regarding the fence. Considering this, Mahaiwe proposed two options regarding the fence. The first option, and the one preferred by Mahaiwe, is to keep the existing fence unchanged, except to close any gaps "with a continuation of the existing fence." The second option is to install new fencing, identical to that on Pumphouse Island, a neighboring property owned by the City. A photograph for the second option shows a fence with vertical metal posts bolted into the ground, two top rails and one bottom rail between them, and vertical metal pickets between the bottom rail and the lower top rail.

The DRB held a hearing on the application on August 1, 2016. At that hearing, Mahaiwe's representative noted the two fencing options it had presented, and repeated that while Mahaiwe preferred the existing fencing, the DRB could require different fencing, including that proposed as "Option II" in the July 13, 2016 letter.

On September 12, 2016, the DRB approved the permit application with the following condition:

> The Applicant shall replace and install perimeter fencing on the Norton Grist Mill property including modifications to close off any breaks in the fencing that currently exist. The fencing shall be substantially identical with the perimeter fencing on Pumphouse Island as proposed by the Applicant in Option II.

A second condition requires Mahaiwe to obtain a certificate of occupancy confirming that the fencing is installed as called for in the first condition.

### Discussion

As with all matters appealed to this Court, our review is limited to the issues raised in the Statement of Questions. V.R.E.C.P. 5(f). Mahaiwe's Statement of Questions includes 16

3

questions, but Mahaiwe's brief only addresses some of these.[2] Those questions not briefed are normally subject to dismissal. <u>McAdams v. Town of Barnard</u>, 2007 VT 61, ¶ 8, 182 Vt. 259 ("Arguments not briefed are waived."); <u>In re T.A.</u>, 166 Vt. 625, 626 (1997) (mem.) ("Issues not briefed are waived.").

The remaining questions are:

Question 1: whether the City of Vergennes Zoning and Subdivision Regulations, effective December 10, 2015 ("the Regulations"), including Sections 703, 803, and 1610, authorize the DRB to impose the conditions set out in the decision approving Mahaiwe's application;

Question 2: whether the DRB abused its discretion, or acted arbitrarily and capriciously, in imposing the conditions;

Question 6: whether the DRB exceeded its statutory authority under 24 V.S.A. ch. 117, including 24 V.S.A. § 4414, in imposing the conditions;

Questions 7, 9, and 10: whether the conditions were imposed pursuant to an impermissibly vague standard;[3] and

Question 13: whether the approval is binding as to lighting.

These Questions present five separate legal issues for us to address. We address those legal issues in the separate sections below.

---

[2] Mahaiwe initially suggested that the Court allow the parties to brief some "preliminary issues" on a "summary judgment-type basis." The Court reminded legal counsel that in an on-the-record appeal, summary judgment procedures are not appropriate, since the Court is not empowered to convert such appeals to a de novo proceeding, engage in independent fact finding, or receive new evidence. <u>In re Grist Mill Horse Barn Redevelopment Plan (2nd Appeal)</u>, No. 89-5-09 Vtec, slip op. at 2 (Vt. Super. Ct. Env. Div. Aug. 5, 2010) (Durkin, J.). The Court in the appeal at bar issued a Scheduling Order, proposed by Mahaiwe, that called for supplemental briefing, "should the . . . preliminary briefing not resolve the matter . . . ." <u>In re Mahaiwe SP & CU App. (OTR Appeal)</u>, No. 121-10-16 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Dec. 12, 2016) (Durkin, J.). Since we regard the determinations announced in this Decision as having "resolve[d] the matter," we have concluded that further briefing is unnecessary.

[3] These questions ask whether the Vermont State Constitution prohibits the condition or whether the DRB acted with standardless discretion when imposing the conditions. We understand Mahaiwe's void-for-vagueness argument as invoking Constitutional due process claims, which is provided for in Article 4 of the Vermont Constitution. See <u>In re Laberge NOV</u>, 2016 VT 99, ¶ 17 n.1, (Vt. Sep. 2, 2016),

I.  Whether the zoning regulations and statutes allow the reviewing body to impose conditions requiring Mahaiwe to install new fencing

A municipal panel "may attach additional reasonable conditions and safeguards" to a land use application approval "as it deems necessary to implement the purposes of [Title 24, ch. 117] and the pertinent bylaws and the municipal plan then in effect." 24 V.S.A. § 4464(b)(2). This statute applies to site plan review and conditional use approval. See Id. § 4416(a) (site plan review entails a "process pursuant to" § 4464; § 4414(3)(B) (conditional use approval may require site plan approval and "[a]ny other standards and factors that the bylaws may include"). Regulations § 803.

Ensuring safety is among the purposes of the Regulations. The express intent of the Regulations is "to provide for orderly community growth and to further the purposes established in [24 V.S.A.] § 4302." Regulations § 102. Section 4302, in turn, states that municipal planning and development laws are designed, in part, "to encourage the appropriate development of all lands in this State . . . in a manner which will promote the public health, safety against fire, floods, explosions, and other dangers." 24 V.S.A. § 4302. The Regulations further state that they should be interpreted and applied "for the promotion of the public health, safety, comfort, convenience, and general welfare." Regulations § 103.

As to site plan review, the Regulations state that site plans must including "proposals for mitigating . . . hazards." Regulations § 702. Conditional use review calls for attaching whatever "safeguards" are necessary to implement the purposes of the Regulations and municipal plan. Regulations § 803.

Generally, then, ensuring safety is among the purposes of the Regulations and municipal land use statutes. Under 24 V.S.A. § 4464(b)(2), reasonable conditions and safeguards may be attached to permits to implement that purpose.

More specifically, the Regulations call for ensuring the safety of pedestrians, including with the use of fencing. For example, the review process for site plans includes consideration of the "[p]rovision of safe pedestrian facilities including . . . on-site circulation." Regulations § 702; 24 V.S.A. § 4416. The Regulations also call for conditional use review to include consideration of appropriate fencing. Regulations § 802.

5

Furthermore, the Regulations state in the purpose section of the Otter Creek Basin Zoning District ("OCB District") that "[d]evelopment and redevelopment shall be sensitive to the unique environmental qualities of the area." Regulations § 1610. This could be interpreted to include considerations for the safety of occupants where a proposed project is directly on the waterfront.

Based on the provisions set out above from the relevant statutes and Regulations, we conclude that the DRB has the authority to impose reasonable conditions to ensure safety, including conditions that call for fencing to mitigate the hazard posed by a project's proximity to a waterfront.

II.     Whether rules of statutory construction prohibit a fencing condition

Mahaiwe notes that the statute authorizing conditional uses, 24 V.S.A. § 4414(3), lists certain general and specific standards that may be considered in conditional use review, and "fencing" is not listed among these. Citing the principle of *expressio unius est exclusion alterius*, Mahaiwe argues that consideration of fencing is therefore not allowed in any conditional use review in the City. For the reasons stated below, we reject this assertion.

"[T]he canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003) (quoting United States v. Vonn, 535 U.S. 55, 65 (2002)).

We are unable to read § 4414(3) as inferring that the drafters of the statute deliberately meant to exclude fencing. First, the statute does not necessarily exclude fencing; instead, it contains a catch-all provision allowing for the consideration of "[a]ny other standards and factors that the bylaws may include" when making a conditional use determination. We see no basis for an assertion that conditional use review could not include appropriate safety measures, including fencing. Second, the statute also allows consideration of "[c]riteria adopted relating to site plan review pursuant to" 24 V.S.A. § 4416. Id. § 4414(3)(B)(iv). Section 4416, in turn, allows the consideration of "appropriate conditions and safeguards with respect to . . . circulation for pedestrians." Id. § 4416. Again, we see no basis for why fencing could not be an appropriate

6

safeguard to ensure the safe circulation of pedestrians on the site. For these reasons, we cannot adopt Mahaiwe's *expressio unius* argument.

Mahaiwe further argues that *expressio unius est exclusio alterius* prohibits consideration of fencing here because, while fencing is mentioned in the Regulations for the Central Business District, it is not mentioned for the OCB District. Regulations §§ 1609, 1610. This is not a case where a statute expresses items as an associated group or series, and omits certain items from that group or series. Rather, it is a case where zoning regulations set out very specific standards for one zoning district, and less specific standards for another. We therefore conclude that the *expressio unius* theory is inapplicable to this case.

III.  Whether the conditions are impermissible because they are based on an unenforceably vague standard

Mahaiwe contends that because the Regulations do not specifically state what type of fencing is appropriate to ensure safety, and they do not refer to any external, objective standards for fencing, the condition regarding fencing is an impermissible exercise of standardless discretion. See In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 17, 185 Vt. 201.

This argument misses the mark, because the DRB was not required to apply a standard or policy that specifically called for fencing. Instead, it was required to apply the standards set out in Regulations § 703, under which site plan approval is contingent on the applicant demonstrating that the proposed plan provides "safe pedestrian facilities including . . . on site circulation." It also applied a standard, at § 702, requiring the site plan to show "proposals for mitigating hazards." It applied still another standard, related to conditional use approval, which calls for review of "landscaping and fencing," and also requires conformance with other applicable Regulations, which includes §§ 702 and 703. Regulations § 803.

These standards are based on a reasonable person's understanding of safety, which is not an impermissibly vague benchmark. See In re Laberge NOV, 2016 VT 99, ¶¶ 17–22 (Vt. Sep. 2, 2016). By imposing the condition that Mahaiwe install an appropriate fence, the DRB was concluding that without an appropriate fence, the project failed to meet the criteria for site plan review and conditional use approval. In determining what type of fence is appropriate, the DRB

7

resorted to a reasonable understanding of safety. The reality that the DRB also adopted Mahaiwe's own suggestions for fencing negates Mahaiwe's challenge to this condition.

For these reasons, we are unable to conclude that any standard in the Regulations applied in this case is so vague as to be unenforceable.

IV.     Whether the conditions are arbitrary or capricious

The DRB imposed a condition requiring improvements in fencing at the project site based on its conclusion that the project site, in its existing condition, failed to provide adequate protection against a fall hazard.

In an on-the-record appeal we "affirm the findings of the DRB if reasonably supported by the evidence," and we defer to the DRB where there is conflicting evidence. In re Ferrera & Fenn Gravel Pit, 2013 VT 97, ¶ 6, 195 Vt. 138 (citing Devers–Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 4, 181 Vt. 248).

Here, the DRB found that families, including children, are likely to be present on the property, given that it is a ten-unit residence; that the project site is located on an island in Otter Creek adjacent to a waterfall with a 37-foot drop; and that the existing fencing, which includes sections composed of posts and chains and has a number of gaps, is not sufficient to ensure that people will not fall into the water.

We conclude that these findings are supported by the evidence. Photographs submitted with the application show the post and chain fencing, the gaps in the fencing, and the water below. Under the deferential review that we give to factual findings in on-the-record appeals, these photographs alone are sufficient to support the finding that there is a fall hazard and that the existing fencing is insufficient to mitigate that hazard. In addition, at the hearing, Mahaiwe's representative confirmed that the project site is an island, and appeared to confirm that the site is adjacent to a waterfall with a 37-foot drop.

Because the DRB's factual findings related to the fall hazard and the need for appropriate mitigation are reasonable in light of the evidence, we affirm those findings.

We "review the DRB's legal conclusions without deference where such conclusions are outside the DRB's area of expertise." In re Stowe Highlands Resort PUD to PRD Application, 2009

VT 76, ¶ 7, 186 Vt. 568 (citing Devers–Scott, 2007 VT 4, ¶¶ 8–9). The DRB has no specific expertise warranting deference in this case.

Given the factual findings that the proposed project site presents a fall hazard that the existing fencing does not sufficiently mitigate; and given that site plan review and conditional use approval require the proposed project to provide for safety, including safety of pedestrians, as discussed above; we conclude that further mitigation is required by the applicable Regulations and statutes. A fence that is more substantial than the existing post-and-chain fence, with its multiple gaps, would provide an appropriate measure of mitigation. In reaching this conclusion, we are unable to agree with Mahaiwe that the DRB's conditions on fencing are arbitrary or capricious.

Furthermore, we conclude that the DRB was not acting arbitrarily or capriciously in requiring the installation of a very specific type of fence. First, as with the lighting, discussed below, this is the only type of fence that Mahaiwe proposed which complies with the Regulations.[4] Second, requiring this fencing—which is identical to that on the neighboring property—comports with the Regulations' guidance for the OCB District, which indicates that aesthetics should and will be taken into consideration.

V.     Whether Mahaiwe is bound by any conditions regarding lighting

Mahaiwe's Question 13 asks whether the lighting proposed in the application is incorporated as a condition in the DRB's approval. In its briefs, Mahaiwe notes that the DRB decision makes no findings on lighting and there is no factual record regarding lighting. Mahaiwe goes on to argue that because the City's opposition brief does not address lighting, and because "there is no evidentiary basis on the record to justify any lighting conditions, . . . any lighting conditions should be stricken from the issued permit."

Mahaiwe proposes a specific light fixture in its application. PC at 12. This was addressed by the DRB and Applicant's representative at the hearing on the application, and expressly included in the record by the DRB. Id. at 35. The DRB did not, however, discuss whether the proposed lighting complies with the Regulations, and the DRB decision is silent regarding lighting.

---

[4] The alternative proposed by Mahaiwe, to maintain the post-and-chain fencing and close any gaps with chain, would not provide adequate fall protection and therefore fails to comply with the Regulations.

9

The Vermont Supreme Court has held that "[t]he approved description of [a] project, as contained in the permit application or attachments," becomes a permit condition. In re Jackson, 2003 VT 45, ¶ 29, 175 Vt. 304 (citing In re Duncan, 155 Vt. 402, 410 (1990)). Applying this rule to the case at hand, we conclude that Mahaiwe is required to comply with the lighting fixture proposed in its application.[5]

### VI.    Propriety of a site visit

Lastly, we note that the City suggested in correspondence, dated and filed on January 31, 2017, that the Court conduct a site visit "to assist the Court in understanding the evidence contained in the record" of this appeal. Mahaiwe objected to this suggestion, and asserts that site visits are never appropriate in an on-the-record appeal.

The Court has the discretion to conduct site visits in all appeals that come before it. V.R.E.C.P. 2(d)(2)(ix). In the practice of this Court, site visits are never conducted to receive evidence, but rather to give context to the evidence or record that the Court is reviewing. In re Byrne Trusts NOV, No. 150-07-08 Vtec, slip op. at 7 (Vt. Envtl. Ct. Jul. 15, 2009) (Durkin, J.) (holding that measurements taken by DRB at site visit are not evidence, and not part of the record in an on-the-record appeal, adding that "[a]s this Court often stresses whenever we have the opportunity to make a site visit, the site visit itself is not evidence, nor is it a part of the record.").*J.* While on rarely done, the Court has conducted site visits in on-the-record appeals, to provide context to the record presented. In this instance, however, the Court declines to conduct a site visit, as it appears that the proposed site visit is unnecessary for the Court to have sufficient context of the record presented.

### Conclusion

For the reasons set out above we **AFFIRM** the conditions set out in the September 12, 2016 DRB decision regarding fencing. We further note that the site plan review and conditional use approval are conditioned on Mahaiwe using the light fixtures presented in its application.

---

[5] Furthermore, we note that lighting must be taken into account in site plan review and conditional use approval. Mahaiwe has offered no alternative lighting plan. To the extent that we sit in the place of the DRB in this appeal, the only thing we have to determine compliance with the regulations is the lighting plan contained in the original application.

Any proposed modification to lighting or fencing, or any other modification presented in the future, must comply with Regulations § 313, which governs amendments to approved permits.

This completes the current proceedings in this Court concerning this on-the-record appeal. A Judgment Order accompanies this Decision.

Electronically signed on April 28, 2017 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division