2006 VT 33

**In re Appeal of William SMITH**

[898 A.2d 1251]

No. 05-062

¶ 1. April 24, 2006. The Chittenden County Fish and Game Club ("Club") appeals the Environmental Court's decision that neighboring property owners ("landowners") may challenge an increase in the frequency of the Club's nonconforming use under the Town of Richmond Zoning Regulations. The Club asserts that landowners' opportunity to challenge any expansion in use is foreclosed by their failure to timely appeal the town zoning administrator's approval of the Club's permit application for previous construction. We affirm.

¶ 2. The undisputed facts can be briefly summarized. The Club has been in existence for more than seventy years, operating shooting ranges, fishing ponds, hiking trails, and campsites. When the town adopted zoning in 1969, the area including the Club's location was designated an agricultural/residential zoning district, and the Club's use of the land became a nonconforming use because private clubs were not allowed in the district and outdoor recreational facilities were allowed only if approved by the Richmond Development Review Board (DRB). Since 1969, the Club made a number of physical improvements to the property without seeking a zoning permit. In May of 2002, the Club submitted a permit application to the town zoning administrator for the previously-built improvements. The application listed nineteen building, construction, and earthmoving improvements to the facility, including: replacing shelters and benches; adding a target berm; adding earthen berms for safety and noise reduction and to restrict access to the

shooting area; replacing and moving the rules board for increased visibility; installing a chain-link fence to control access to the shooting range; increasing the height of target backstop berms; installing a gate to the pond; replacing and resurfacing certain bridges; improving the parking lot surface; and drilling a new well and enclosing it within a pump house. The zoning administrator approved the permit twelve days after it was submitted, with only the following notation: "No new work to be completed; Brings site into conformance." The zoning administrator publicly posted the permit as provided by 24 V.S.A. § 4443(b), and it was not appealed within the fifteen-day appeal period, as required by 24 V.S.A. § 4464(a).[1]

¶ 3. On June 18, 2002, landowners sent a letter to the zoning administrator, challenging the Club's expansion and the increase in noise and activity level. In a written response, the zoning administrator refused to take action on the grounds that he had granted the Club a permit and the permit was not appealed. The zoning administrator also stated in his response that because there was no change in the posted hours of the shooting range, the use of the range during those hours did not constitute a change or an expansion of a nonconforming use. Landowners appealed to the DRB, which affirmed the zoning administrator's decision. The DRB acknowledged that the zoning administrator lacked authority to approve the permit application, but concluded that the permit approval never-

___

[1] All statutory provisions in this decision, unless otherwise noted, refer to Vermont's Planning and Development Act in effect prior to the 2004 amendments. See generally 2003, No. 115 (Adj. Sess.) (amending and redesignating substantial portions of the Act).

theless became final when it was not appealed. Landowners then appealed to the Environmental Court.

¶ 4. After a merits hearing, the Environmental Court, relying on our decision in *In re Jackson*, 2003 VT 45, ¶ 23, 175 Vt. 304, 830 A.2d 685, explained that nonconforming uses are allowed to continue in their preexisting, nonconforming status without conditional use approval, but they remain nonconforming until or unless they obtain conditional use approval from the DRB. Because the use of the land was nonconforming, no improvements should have been approved without review by the DRB under § 4.7 ("Non-conforming Use") or § 5.5 ("Conditional Use Approvals") of the Town of Richmond Zoning Regulations. The court concluded that the zoning administrator improperly authorized the improvements by its error in acting on the application instead of forwarding it to the DRB. The court further concluded, however, that the zoning administrator's approval of the Club's after-the-fact permit application extended only to the as-built construction and structures, but did not transform the Club's use of the land into a conforming use for the future. The court held that, notwithstanding the newly-permitted physical changes to the property, any increase or expansion in its actual use after 1969 would still require approval as a change to a nonconforming use under § 4.7, or as a conditional use under § 5.5, of the zoning regulations. From the evidence presented, the court found that the use of the shooting range had at least doubled since its use in the 1970s and 1980s, and the hours and seasons of operation also increased.

¶ 5. The Club raises no challenge to the Environmental Court's findings. It is also undisputed that the zoning administrator lacked the authority to approve the permit application, that landowners failed to appeal the zoning administrator's permit approval within the time allotted by law,

and that landowners are now bound by the zoning administrator's approval of the permit. The Club argues on appeal that the Environmental Court erred by construing the unappealed zoning permit to apply solely to structures and not to uses, and in concluding that the Club's expansion in use required further review and approval from the DRB. The Club contends that the principle of the exclusive remedy codified by 24 V.S.A. § 4472(d) compels a conclusion that the uses were already permitted by the zoning administrator's mistakenly-granted permit.[2]

¶ 6. The Club relies on this Court's previous pronouncements that we will strictly enforce the exclusivity-of-remedy provision, "consistent with the evident legislative intent to require all zoning contests to go through the administrative review process in a timely fashion," *Town of Charlotte v. Richmond*, 158 Vt. 354, 356, 609 A.2d 638, 639 (1992) (internal quotations omitted), and that the policy of repose is implemented even where the act or decision is ultra vires, *Levy v. Town of St. Albans*, 152 Vt. 139, 143, 564 A.2d 1361, 1364 (1989). We review the construction of a statute on a nondeferential and plenary basis. *In re Dep't of Bldgs. & Gen. Servs.*, 2003 VT 92, ¶ 8, 176 Vt. 41, 838 A.2d 78. We review the Environmental Court's construction of local zoning ordinances to determine whether the court's interpretation is clearly erroneous, arbitrary, or capricious. *In re*

*Casella Waste Mgmt., Inc.*, 2003 VT 49, ¶ 6, 175 Vt. 335, 830 A.2d 60.

¶ 7. Notwithstanding the Club's argument that this case is simply an application of the exclusivity principle contained in § 4472(d), we conclude that the determinative question is the *extent* of the zoning administrator's decision and the interpretation of the notation: "Brings site into conformance." The Club argues that the notation means that the zoning administrator effectively issued a permit for a use that is not permitted in the district, that the permit should be considered a mistakenly-granted conditional use permit, and that, once the permit issued and was not timely appealed, the Club's use of the land could no longer be considered nonconforming. We disagree for the reasons that follow.

¶ 8. The Club's focus on one portion of the zoning administrator's notation fails to take into consideration that the notation does not stand alone. The full notation in the zoning administrator's permit approval is: *"No new work to be completed*; Brings site into conformance." (emphasis supplied). The Club was required to obtain permit approval prior to making *any* physical changes to the property, whether or not such physical changes caused or coincided with a change or expansion of the actual use of land as a shooting range. See Town of Richmond Zoning Regulations § 1.2 (providing that "[n]o 'Land Development' shall commence without the issuance of a Zoning Permit" and "[n]o Zoning Permit may be granted unless the proposed Land Development is in conformance with these Zoning Regulations"), *id.* § 7.2 (defining "Land Development" to include "construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure, or of any mining, excavation or landfill, and any change in the use of any building or other structure, or land, or extension of use of land"). Thus, the Club

---

[2] 24 V.S.A. § 4472(d) provides that in the absence of an appeal from a local zoning decision, "all interested persons affected shall be bound by such decision or act of such officer ... and shall not thereafter contest, either directly or indirectly, such decision or act ... in any proceeding, including, without limitation, any proceeding brought to enforce this chapter."

was out of conformance with zoning regulations simply by virtue of the fact that it made physical changes to the property since 1969 without first obtaining a permit.

¶ 9. The Club's application does not suggest that it sought approval for a change or increase in the overall intensity of the use of the land as a recreational club. The space on the permit application for an applicant to indicate that the requested permit is for a "change in use" was left blank — the application requests approval only for "previous construction." Moreover, the "[d]escription of activity proposed" does not indicate an increase in use; rather, the list of specific "additions and improvements," with the exception of a "small 7 yard target berm at 25 yard target area," largely indicates the replacement or upgrading of pre-existing structures and the addition of certain structures and earthmoving to control and *restrict* noise and access to the shooting range.

¶ 10. Neither § 4472(d), nor caselaw, on the facts of this case, support the notion that the zoning administrator's approval must be construed to be any broader than what is requested in the permit application. Because the ultimate goal of zoning is to gradually eliminate nonconforming uses, any extension of that use is carefully limited. *In re Gregoire*, 170 Vt. 556, 559, 742 A.2d 1232, 1236 (1999) (mem.) ("The public interest in the regulation and gradual elimination of nonconforming uses is strong ... and zoning provisions allowing nonconforming uses should be strictly construed." (citation omitted)). To attach a broader meaning to the permit approval than that suggested by the face of the improperly-granted application would run counter to the public policy underlying the statutory and regulatory schemes carefully designed to maximize compliance with zoning regulations and to minimize non-compliance and nonconforming uses. See

also *In re Jackson*, 2003 VT 45, ¶¶ 30-31 (rejecting applicant's argument that grant of permit to modify barn, which was a nonconforming use due to setback of structure, made barn a permitted use that could be further expanded without conditional use review, because to hold otherwise would expand conditional use review to cover any building applicant could possibly build, rather than what was actually proposed).

¶ 11. The legislative policies of repose and administrative efficiency inherent in § 4472(d) are not weakened by declining to extend a zoning administrator's approval of an application beyond the activity proposed in the application. We reject any implication that the Club could have reasonably relied on the zoning administrator's decision to function as approval for an expansion in the historical use of the facilities, particularly where the Club did not seek approval to increase the intensity of the use of the land as a shooting range on the face of its application. We also find unavailing the Club's argument that limiting the permit approval to the physical construction would be akin to receiving a permit to build a house and requiring a separate permit to live in it. The Club is not prohibited from using the structures for their intended purposes; rather, they are limited to using the structures at their historic levels without a conditional use permit authorizing the expansion in use.

¶ 12. Absent any clear indication that the zoning administrator's approval intended to serve as a conditional use permit, which can only be granted by the DRB, Town of Richmond Zoning Regulations § 3.1.2, the Environmental Court did not err in interpreting the unappealed permit to grant only that which the application expressly requested — approval of *previous construction*. Thus, under the exclusivity-of-remedy provision in § 4472(d), landowners are precluded from challenging the previous

construction listed on the permit application and approved by the zoning administrator, but the zoning administrator's error does not transform the Club's operation of a shooting range from a nonconforming use as a recreational facility to a conforming use within this zoning district. Accordingly, because the Environmental Court concluded from the evidence presented that the Club's use of the facilities has expanded or intensified from its historic levels, the Environmental Court did not err in concluding that the Club is required to seek approval from the DRB for that increased use.

¶ 13. Finally, the Club also claims the Environmental Court erred by relying on statutory provisions that were not in effect at the time, 24 V.S.A. § 4304(13)-(16), defining nonconforming lots, structures, and uses to include those "improperly authorized as a result of error by the administrative officer." Because we conclude, based on the law in effect at the time of the zoning administrator's approval, that the permit application extended only to the physical, structural changes to the property, and not to an increase in the recreational use of the property, we do not reach the question of whether this statutory provision was intended to apply retroactively.

*Affirmed.*