STATE OF VERMONT

ENVIRONMENTAL COURT

| | } | |
|---|---|---|
| Huntington NOV Appeal | } | Docket No. 204-8-06 Vtec |
| | } | |

**************************************************************************

| | } | |
|---|---|---|
| Town of Bradford, | } | |
| Plaintiff, | } | |
| v. | } | Docket No. 209-9-06 Vtec |
| George Huntington, | } | |
| Defendant. | } | |
| | } | |

### Decision and Order on Pending Motions

These consolidated cases address the use of a small parcel of land at the intersection of Vermont Routes 25 and 25B in the Town of Bradford. A permit authorizing the sale of used autos was issued in 2002, but such use became non-conforming when the Town of Bradford (Town) amended its zoning regulations in 2003. A dispute arose when the present owner of the property leased it in 2006 for commercial use, relying on the previously-approved permit.

Docket No. 204-8-06 Vtec concerns Appellant George Huntington's timely appeal from a decision by the Town of Bradford Zoning Board of Adjustment (ZBA) to uphold a notice of violation for operating a commercial enterprise without a permit. The second pending case, Docket No. 209-9-06 Vtec, concerns the Town's efforts to enforce the violation notice and obtain injunctive relief and monetary damages from Mr. Huntington. The Town is represented by Paul Gillies, Esq.; Mr. Huntington is represented by Marc Nemeth, Esq. Both parties have moved for partial summary judgment. The following facts are undisputed unless otherwise stated.

### Statement of Facts

1. George Huntington owns the 0.33 acre property located at 1660 Waits River Road in the Town of Bradford, located at the junction of Vermont Routes 25 and 25B. Until recently, Mr. Huntington leased the property to First Trust Vermont Corporation for the operation of a commercial business involving storage, sale, and repair of used motor vehicles.

1

2. During the course of its lease with Mr. Huntington, First Trust Vermont Corporation conducted commercial activities on the property, including (but perhaps not limited to) the sale of used vehicles, storage, and repair of such vehicles. The Town also claims that Mr. Huntington allowed yard sales to be conducted on the property, but Mr. Huntington disputes this fact; it therefore is not relied upon for purposes of deciding the pending motions.

3. George Huntington purchased the property on August 30, 2005 from Bill Lowery, the then owner of the property. Mr. Lowery had previously leased the property to Jim Moorcroft, d/b/a Pride Auto East.

4. On August 27, 2002, the Town issued a zoning permit to Jim Moorcroft, d/b/a Pride Auto East, authorizing the operation of a used auto sales business. At the time this permit was issued, the Town of Bradford Zoning Regulations (Regulations) identified the property as being located in the Neighborhood Commercial District.

5. In 2003, the Town revised its Regulations, thereby changing some of the zoning district boundaries. The subject property was thereafter located in the Residential District, which did not allow commercial uses of property.

6. Vermont state law requires one who wishes to operate a used car sales business to apply for and maintain a license to hold "dealer plates." Due to circumstances not relevant to the pending motions, the dealer plates for Pride Auto expired on August 31, 2004.

7. On September 13, 2004, the Town Zoning Administrator issued a notice of violation to Mr. Lowery, as then owner of the property, for allowing cars to be parked within the roadway setback. We hereinafter refer to this notice of violation as the "2004 NOV." No party appealed the 2004 NOV.

8. In December 2004, the Town's Assistant Zoning Administrator informed Mr. Lowery by way of a letter that his use of the property constituted a junk yard which was not a permitted or conditional use in the Residential District. The letter stated that Mr. Lowery had thirty days to remove the cars. The record before us does not reveal that Mr. Lowery appealed this determination.

9. On March 2, 2005, the Town sent Mr. Lowery another letter, extending the deadline to remove the cars until March 15, 2005.

10. Mr. Moorcroft sent a letter to the Town, dated March 15, 2005 explaining the problems he was having removing the cars.

11. Mr. Lowery was cited by the Constable for operating a junkyard without a license on March 25, 2005.

12. Mr. Huntington purchased the property from Mr. Lowery on August 30, 2005. He thereafter leased the property to First Trust Corporation, effective May 1, 2006. The lease was "for the commercial purposes of operating [a] business w/ storage & sales, & repairs."

13. On June 20, 2006, the Zoning Administrator issued another zoning violation notice for the subject property, this one addressed to Mr. Huntington, as then owner of the property. The notice alleged that he was allowing a commercial enterprise to be operated on the property without the necessary permit, "including, but not limited to, parking vehicles offered for sale within the Vermont highway right-of way [sic] of Route 25B." We hereinafter refer to this violation notice as the "2006 NOV."

14. Mr. Huntington timely appealed the 2006 NOV to the DRB. The DRB upheld the 2006 NOV. Mr. Huntington thereafter appealed to this Court, which appeal is the subject of Docket No. 204-8-06 Vtec.

### Discussion

As we address the pending motions, we note that summary judgment is only appropriate "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." In re Carter, 2004 VT 21, ¶ 6 (citation omitted). When competing motions for summary judgment are presented, such as here, we are directed to address each motion separately and view the facts in a light most favorable to the party opposing the motion under review. See Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990) (where both parties are seeking summary judgment, "both parties are entitled to these benefits when the opposing party's motion is being judged."). Our analysis here relies for the most part on facts that the parties do not dispute. However, where the material facts are disputed, we show the proper deference to the party opposing the motion under review.

### 1.    Limitations of Non-Conforming Uses

The facts of this case present an often-repeated legal doctrine, this one relating to lawful, pre-existing uses of property that do not conform to the current zoning regulations. Such uses are often referred to as non-conforming uses. 24 V.S.A. § 4303(15).

3

Vermont allows its municipalities to regulate and limit the continuation of non-conforming uses. See 24 V.S.A. § 4408 (2004).[1] Such authority is encompassed in a Vermont municipality's power to use zoning as an extension of its police powers for the lawful regulation of land use and development. Galanes v. Town of Brattleboro, 136 Vt. 235, 240-241 (1978) (citing City of Rutland v. Keiffer, 124 Vt. 357, 359 (1964)). We are directed to start our analysis from "the proposition that zoning enactments are entitled to the presumption of validity. . . .. [However, A]gainst this is the rule requiring strict municipal compliance with the statutory mandates, based upon the concept that zoning law is in derogation of private property rights." Galanes, 136 Vt. at 240 (citations omitted).

Section 4408(b) establishes the means by which municipalities "may regulate and prohibit expansion and undue perpetuation of nonconforming uses . . .." The parties here do not dispute that the Bradford Regulations do not exceed the regulatory authority of § 4408(b). Specifically in relation to the facts of this case, the Bradford Regulations prohibit the changing of a non-conforming use to another non-conforming use, unless approved by the ZBA, Regulations § 6-7(A), and prohibit the re-establishment of a non-conforming use that "has been discontinued for a period of two (2) years . . .." Regulations § 6-7(C).

Mr. Huntington appears to assert that his continued use of his property should not be regarded as non-conforming, as it is undisputed that his predecessor in title obtained a permit for the then lessee to run a used car business from the property. This argument ignores the undisputed fact that the Bradford Regulations were amended in 2003 and that one consequence of the 2003 amendments was that such a use was no longer permitted in the applicable zoning district.

Lawful amendments to zoning regulations may make previously permitted uses non-conforming. In fact, a use that does not conform to the current zoning regulations may only continue under the "grandfathered" status of a non-conforming use if it "conformed to all applicable laws, ordinances and regulations prior to the enactment [or amendment] of such regulations." 24 V.S.A. § 4408(a)(1). While it is undisputed that Mr. Huntington's predecessor

---

[1] Title 24, Chapter 117 was generally amended by the Permit Reform Act of 2004. However, the Savings Clause provisions of 24 V.S.A. § 4481 (2006) allows the enabling laws of the prior Chapter 117 sections, including those relating to the regulation of non-conforming uses, to remain in effect until the municipality revises its municipal regulations, which is required by September 1, 2011. The Bradford Zoning Regulations have yet to be amended in response to the Permit Reform Act of 2004. Thus, the applicable enabling law for its regulation of non-conforming uses is 24 V.S.A. § 4408 (2004).

4

received a permit to conduct an auto sales business, it is also undisputed that Mr. Huntington's continuation of such use does not conform to the present zoning regulations. Thus, we conclude that he may only continue such use of his property as a lawful continuation of a pre-existing non-conforming use.

It is important to note here that one goal of zoning is to gradually eliminate non-conforming uses. In re Appeal of Lashins, 174 Vt. 467, 470 (2002) (citation omitted). The continuation of non-conforming uses "is carefully limited," since the "public interest in the regulation and gradual elimination of nonconforming uses is strong . . .." In re Appeal of Gregoire, 170 Vt. 556, 559 (1999) (citation omitted). Thus, while such uses may continue, their lawful continuation is limited to the "historic levels" of use that existed while such use was still lawful. In re Appeal of Smith, 2006 VT 33, ¶ 11.

We cannot discern the "historic levels" of use of Mr. Huntington's property that existed just prior to the Town's amendment of its zoning regulations in 2003 from the undisputed facts before us on summary judgment. We therefore await the presentation of evidence at trial on this point by both parties. But we can and do conclude here as a matter of law that Mr. Huntington may not exceed that historical level of use of the property under the doctrine of lawful, pre-existing non-conforming uses. To the extent that Mr. Huntington's present or proposed use of his property exceeds the lawful use made of it just prior to the Town's zoning amendment, his use is unlawful and constitutes a zoning violation, unless and until he receives conditional use approval by the ZBA, pursuant to Regulations § 6-7(A).[2]

## 2. Applicability of 2004 NOV

The Town has also moved for a summary judgment that the 2004 NOV is "unassailable" because it was unappealed and Mr. Huntington is therefore bound by it in this case. Mr.

---

[2] The issue of whether any lawful pre-existing nonconforming use was expanded, or otherwise made unlawful, may only be resolved at trial. The Town has submitted evidence, in the form of an Affidavit of Zoning Administrator Andrew Dorsett, along with photographs, that appear to reflect ongoing construction work on the property. If Mr. Huntington is expanding the scope of any pre-existing nonconforming use without a permit, he should be aware that such activities may result in his use having become unlawful as of the date of the unpermitted expansion. See In re Smith, 2006 VT 33, ¶4 (noting that changes to nonconforming uses may require conditional use approval, depending on the applicable zoning regulations). Without evidence of what activities Mr. Huntington is conducting, we cannot determine on summary judgment whether Mr. Huntington has impermissibly increased or expanded any lawful, pre-existing nonconforming use of the property into an unlawful use. However, Mr. Huntington should bear in mind that in the context of his NOV appeal, it is his burden to establish that his use is lawful; a failure to do so could result in subsequent notices of violation and enforcement proceedings.

Huntington has cross-moved for summary judgment that the 2004 NOV has no bearing on this case. We disagree with Mr. Huntington.

We first note that the 2004 NOV is not the basis upon which the Town brought its enforcement action, nor could it be. Mr. Huntington was not the property owner at the time the 2004 NOV was issued, nor was the notice addressed to him. But these undisputed facts do not mean that the 2004 NOV has no bearing on this case.

As noted above, a non-conforming use is only entitled to "grandfathered" status if it once "conformed to all the applicable laws, ordinances and regulations . . .." 24 V.S.A. § 4408(a)(1). Stated differently, a use that violated prior zoning regulations cannot be classified as a lawful, pre-existing, non-conforming use after a change in relevant zoning regulations; such a use is merely regarded as an illegality, and is subject to zoning violation proceedings. Thus, while Mr. Huntington was not the party responsible for the actions that gave rise to the 2004 NOV, he cannot rely on those historical uses in framing the uses for which he may now claim grandfathered status. The 2004 NOV, now final because it was not appealed, evidences that the use complained of in 2004 was in violation of the then-existing zoning regulations. It may therefore not now be classified as a lawful, pre-existing, non-conforming use under 24 V.S.A. § 4408(a)(1).

Mr. Huntington has expressed a grievance about being held responsible for the alleged zoning violations of his predecessor in title. But the Town's enforcement complaint does not seek injunctive relief or monetary penalties against Mr. Huntington based upon the 2004 NOV; the Town's enforcement action is premised upon its 2006 NOV, directed to Mr. Huntington's activities and those that he allowed after purchasing the property. The more accurate summation of the relevancy of the 2004 NOV to the pending proceedings is that it evidences what uses cannot not be regarded as lawful, pre-existing non-conformities. Specifically, using the 50-foot setback as an area to display used cars for sale was deemed illegal in 2004. Because that allegation was not appealed by Mr. Huntington's predecessor in title, Mr. Huntington cannot now claim that displaying cars for sale within the 50-foot setback from the roadway is a lawful, pre-existing, non-conforming use. As was the unfortunate case for Mr. and Mrs. Gregoire, Mr. Huntington "can be bound by" the actions of his predecessors in title, when asserting that his use is a lawful, pre-existing non-conforming use. Gregoire, 170 Vt. at 560.

6

### 3.    Two-Year Abandonment Issue

The Town has moved for summary judgment that any lawful, nonconforming use of the property for the purpose of selling used vehicles has lapsed due to abandonment. Mr. Huntington has cross-moved for summary judgment that there has been no abandonment. Because many facts are unclear, and where some are clear, they are disputed, we cannot grant summary judgment to either party and await the offer of admissible evidence at trial.

Regulations § 6.7(C) provides that "[w]hen a non-conforming use has been discontinued for a period of two (2) years, it shall not thereafter be re-established." Here, it is undisputed that the Town issued a zoning permit on August 27, 2002 to the lessee of Mr. Huntington's predecessor in title, Mr. Moorcroft, authorizing "used auto sales" on the property. Mr. Moorcroft's dealer plates for his business, Pride Auto East, expired on August 31, 2004. The unappealed 2004 NOV stated that "cars for sale" were parked on the property as of that date. As of December 22, 2004, Mr. Moorcroft had relocated Pride Auto East elsewhere; however, the parties have not provided us with the exact date that Mr. Moorcroft vacated the property, which is more likely the operative date from which abandonment could be calculated. In any event, it appears that vehicles[3] were left on the property in violation of the Regulations until at least March 25, 2005, when the Town issued Mr. Lowery a $100.00 fine for storing vehicles on the property unlawfully. Exh. H.

Mr. Huntington purchased the property on August 30, 2005 and entered into a lease agreement with First Trust Vermont Corporation on June 20, 2006. Exh. I. The stated purpose of the lease was "business w/storage & sales, & repairs." Exh. I. At some point thereafter, used vehicles were offered for sale on the property, as evidenced by the 2006 NOV, but there is no evidence of the scope or timing of these sales. This timeline, which is less than complete, reflects that the latest date by which abandonment may have started is March 25, 2005 and the earliest date by which abandonment ceased would be approximately June 20, 2006, which amounts to less than two years later. Thus, particularly when the material facts are viewed in a light most favorable to Mr. Huntington, we cannot conclude as a matter of law that the abandonment contemplated by Regulations § 6-7(C) has occurred and therefore cannot grant the Town's request to preclude Mr. Huntington from claiming that his present use of the property is

---

[3] It is unclear from the evidence presented whether the vehicles still on the property on March 25, 2005 belonged to Pride Auto. This fact is not material to our disposition of the pending motions.

grandfathered under Regulations § 6-7(A). Similarly, when viewing the facts in a light most favorable to the Town, we cannot conclude as a matter of law that there exist no circumstances under which the two year time limit of Regulations § 6-7(C) has run its course. We must therefore also decline to grant Mr. Huntington summary judgment on this issue.

Neither party has presented evidence as to whether used vehicle sales are continuing on the property, the intensity of the current activity, or the similarity of the current activity to the lawful, preexisting historical use of the property. The only evidence presented alleges that cars were parked on the property as of approximately June 2006, possibly for sale, and that other commercial activity may be occurring now.[4] Neither party has given specific information about what these activities are. The Court is therefore without sufficient facts to determine if the nonconforming use that existed at the time of the 2003 zoning amendment can now be the basis for Mr. Huntington continuing whatever use he now intends for his property. These issues therefore remain for the trial on the merits.

**4.      Applicability of 2006 NOV to Yard Sales**

Mr. Huntington has also requests that the Town's complaint in Docket No. 209-9-06 Vtec be dismissed for failure to state a claim upon which relief can be granted. He bases his argument on the fact that the Town "failed to present or discuss any evidence it [sic] the record to establish it's [sic] allegation that 'yard sale' activity ever occurred on the subject property", as alleged in paragraph 1 of the Complaint. Because of a dispute as to the material facts on this issue, we cannot grant dismissal at this time.

In reviewing a motion to dismiss, "we consider whether, taking all of the nonmoving party's factual allegations as true, it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Alger v. Dep't of Labor and Indus., 2006 VT 115, ¶12 (internal quotations omitted).

Here, taking all of the Town's factual allegations as true, we find that there could be a basis upon which the Town could enforce the 2006 NOV against Mr. Huntington, namely, its allegation that unlawful yard sales were occurring on the property. Both the 2006 NOV and the Complaint allege that Mr. Huntington was operating "a commercial enterprise without benefit of permit, including, but not limited to, parking vehicles offered for sale within the Vermont

---

[4]  Mr. Huntington adds in his brief that after the 2006 NOV was issued, the tenant (presumably First Trust), vacated the premises. Huntington Cross-Motion, at 5.

8

highway right-of way of Route 25B." The 2006 NOV is not a model of clarity, but is sufficient to survive Mr. Huntington's dismissal request. Whether the Town's evidence will be sufficient to show that a yard sale was conducted on the property, in violation of the Regulations, and whether the 2006 NOV gave sufficient notice that such activity was alleged to constitute a violation, will have to wait for the trial.

The standard governing a motion to dismiss is generous toward the non-moving party. Alger, 2006 VT at ¶12. As such, and taking as true the Town's factual allegation that one or more yard sales have occurred on the property, there are circumstances that could entitle the Town to the relief claimed in paragraph 1 of the Complaint. Therefore, we must deny Mr. Huntington's motion to dismiss at this time. The issue of Mr. Huntington's uses of the property, or his tenant's uses of the property, remains for the trial on the merits.

Accordingly, based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that the Town's Motion for Summary Judgment is **GRANTED** to the extent that Mr. Huntington may not claim grandfathered status for any use beyond the lawful historical levels that existed at the time that the Town amended its zoning regulations in 2003, and that the 2004 NOV evidences an unlawful prior level of use for which Mr. Huntington cannot now claim grandfathered status. For the reasons more fully stated above, Mr. Huntington's motions for summary judgment and dismissal are **DENIED**.

Unless the parties advise the Court otherwise, these consolidated matters shall now proceed to trial. There will be a pre-trial conference with the Case Manager to determine the trial schedule; a separate Notice of Hearing will announce the date and time for the pre-trial telephone conference.

Done at Berlin, Vermont this 25th day April, 2007.

_____
Thomas Durkin, Environmental Judge