STATE OF VERMONT

ENVIRONMENTAL COURT



|  | } |  |
| --- | --- | --- |
| In re: Wesco, Inc. (211–219 Main St., Burlington) | } | |
| Notice of Violation | } | Docket No.106-5-07 Vtec |
| (Appeal of Wesco, Inc.) | } | |
|  | } | |

|  | } | |
| --- | --- | --- |
| City of Burlington, Plaintiff, | } | |
|  | } | |
| v. | } | Docket No. 177-8-07 Vtec |
|  | } | |
| Wesco, Inc., Defendant. | } | |
|  | } | |

|  | } | |
| --- | --- | --- |
| In re: Wesco, Inc. (211-219 Main St., Burlington) | } | |
| Parking Permit Application | } | Docket No. 197-9-07 Vtec |
| (Appeal of Wesco, Inc.) | } | |
|  | } | |

Decision and Order on Cross-Motions for Partial Summary Judgment

In Docket No. 106-5-07 Vtec, Appellant Wesco, Inc. appealed from a decision of the Development Review Board (DRB) of the City of Burlington, upholding the Zoning Administrator's issuance of a Notice of Violation for operating a "private parking lot" use on the property. In Docket No. 177-8-07 Vtec, the City brought an enforcement action against Defendant Wesco, Inc. for that asserted violation. In Docket No. 197-9-07 Vtec, Appellant Wesco, Inc. appealed from a decision of the DRB upholding the Zoning Administrator's denial of a subsequent permit application for a 15-space private parking lot use on the property. These three matters have been consolidated by agreement of the parties; the present motions were filed in Docket Nos. 106-5-07 Vtec and 197-9-07 Vtec.

1

Appellant-Defendant (Appellant) Wesco, Inc., is represented by Jon T. Anderson, Esq., David W. Rugh, Esq., and William E. Simendinger; the City is represented by Kimberlee J. Sturtevant, Esq.

As of the issuance of the Notice of Violation in March of 2007, the parties agree that it was the 2005 Zoning Ordinance that was in effect and is applicable, at least to the Notice of Violation and enforcement actions which are the subject of the present motions. If any aspects of the subsequently proposed and adopted Zoning Ordinance may be applicable to the permit application, the parties have not brought such provisions to the attention of the Court; please be prepared to discuss that issue in the conference scheduled in the final paragraph of this decision.

In the two appeals: Docket Nos. 106-5-07 Vtec and 179-9-07 Vtec, Appellant Wesco, Inc. has moved for summary judgment, seeking dismissal of the notice of violation and grant of the application to rent out available parking spaces on the site. The following facts are undisputed unless otherwise noted.

Facts

The property at issue in these cases is a corner lot located at 211–219 Main Street on the south side of Main Street and the east side of South Winooski Avenue, within the city block bounded by King Street to the south and by South Union Street to the east, in what is now a residential high-density zoning district.

Prior to zoning, and under the 1947 and 1962 Ordinances

Appellant's predecessor, the Gulf Oil Corporation (Gulf Oil) acquired the property in 1944 (except for a boundary adjustment at the South Winooski Avenue frontage acquired in 1955[1]). As of the first adoption of zoning in the City of Burlington in 1947, Gulf Oil

---

[1] In 1955, Gulf Oil obtained a long, thin triangle of additional property along the South Winooski Avenue frontage, measuring 5.65 feet along Main Street and 63.35 feet

operated on the property an automobile service station for the repair of vehicles and the sale of gasoline.

Under the 1947 Zoning Ordinance, the property was in the "Commercial" zoning district, in which the use category of "gasoline filling station" and the use category of "public garage or stable" were both conditionally permitted uses, that is, requiring approval by the Zoning Board of Adjustment. 1947 Zoning Ordinance, § 8(2),(4). The term "public garage" was defined as an other-than-private garage used for more than three vehicles "where any such vehicles are . . . stored, repaired, [or] serviced . . . ." 1947 Zoning Ordinance, § 16(7). The 1947 Zoning Ordinance also provided for the continuation of existing non-conforming uses, and their enlargement and alteration, in §§ 10 and 11.

The 1947 Zoning Ordinance did not require any particular amount of off-street parking for any of its uses, and therefore the property was not non-conforming with regards to off-street parking. The gasoline filling station and repair garage uses, as well as any unrelated parking that may have been occurring at that time, were all allowed uses in the district, and were non-conforming only to the extent that they had not obtained conditional approval from the ZBA.

Under the 1962 Zoning Ordinance, the use category of "parking lot" was defined within the category of "personal service establishments" as an allowed use in the Commercial zoning district. 1962 Zoning Ordinance, T.27 § 6512(5). The use category including "service or repair shops for automobiles" and "gasoline filling stations" required approval of the then-ZBA as a so-called "special exception." 1962 Zoning Ordinance, T.27 § 6512(15)(A). Section 6214 prohibited gasoline filling stations within an area including the location of the subject property, except as provided in § 6217 as a continuation of a nonconforming use. Thus, as of the adoption of the 1962 Zoning Ordinance, the use of the

_____

along South Winooski Avenue.

property as a gasoline filling station became a nonconforming use; the repair garage use remained an allowed use in the district, nonconforming only to the extent that it did not hold a "special exception" approval from the ZBA for the use. Any "parking lot" use of the property, unrelated to the repair garage or gasoline filling station uses, that may have been occurring at that time appears to have become a permitted use under the 1962 Zoning Ordinance, and was nonconforming only to the extent that it had not obtained a zoning permit under §6502 for that use. Material facts may be in dispute, or at least have not been provided in connection with these motions, as to the hours of operation of the service station use at that time; as to whether Gulf Oil rented out any parking spaces on the property unrelated to the service station use, and, if so, the number of spaces; and as to whether they were rented out during daytime or overnight hours, and/or on an ad hoc basis during downtown events.

The 1962 Zoning Ordinance contained minimum off-street parking requirements for buildings and structures "erected, enlarged, or rebuilt" or "of which the use is changed." 1962 Zoning Ordinance, T.27 § 6522(g). However, under the 1962 Zoning Ordinance, the property was in the "Inner Business District" area[2] within the Commercial zoning district, in which the minimum parking area requirements did not apply. 1962 Zoning Ordinance, T.27 § 6522(g)(8).

The 1962 Zoning Ordinance also contained a requirement for "availability" of the parking spaces required in the ordinance. 1962 Zoning Ordinance, T.27 § 6522(g)(10). This section did not create a parking "super use," as argued by Appellant. Rather, this section addressed the times during which the required parking must be available. Section 6522(g)(10) distinguished among the times during which the parking spaces required in the ordinance "shall be available for use," depending on the type of use. Parking spaces

---

[2] Bounded southerly by King Street, westerly by Pine Street (extended), northerly by Grant Street (extended) and easterly by North and South Union Streets.

accessory to dwellings were required to be available "for use at all times" by the occupants of the dwellings; that is, they could never be rented out to other users. Parking spaces required for use by patrons, customers, employees, guests and visitors of commercial and industrial establishments were required to be available for use "during the business hours of such establishments." Parking spaces required for use by employees and persons in attendance at places of assembly, such as a school, public auditorium, assembly or meeting room, or stadium (T.27 § 6522(g)(3)(A) and (B)), were required to be available "during the hours when such places are in use." Presumably, owners of properties in the latter two categories could rent out such spaces to other users as a "parking lot" use when those spaces were not required to be available for the primary use. (Compare this concept with the later ordinances' parking waiver provision references to "unique use times," "overlap coverage," or "shared or dual use." 1973 Zoning Ordinance, §6523(E); 2005 Zoning Ordinance, §10.1.19.)

In 1968, Gulf Oil applied for and obtained zoning approval in the form of a "special exception" from the then-ZBA to "demolish existing gas station at 219 Main St. and erect a new three bay – 30′ x 64′ gas station." 1962 Zoning Ordinance, T.27 § 6512(15)(A). The Zoning Administrator's letter informing the Gulf Oil representative of the ZBA's vote stated that the ZBA had granted the special exception with the condition "that any further expansion and alterations would require[] Zoning Board approval."

<u>Under the 1973 Zoning Ordinance</u>

The 1973 Zoning Ordinance created new zoning districts, with reference to the Comprehensive Master Plan for the City. The parties appear to assume that it was the 1973 Zoning Ordinance that placed the property in the High-Density Residential[3] zoning district,

---

[3] The parties appear to agree that Appellant's 1983 applications were submitted under the 1973 ordinance, as amended. Appellant's zoning permit application #83-336 referred to the ZBA for conditional use approval states the zoning district as R[esidential]-

5

but they have not provided the associated zoning map.

Under the 1973 Zoning Ordinance, in the High-Density Residential zoning district, parking facilities themselves were allowed as a permitted use. § 6510(A)(3). In addition, off-street parking as required in § 6523 was allowed as an accessory use. The required number of off-street parking spaces for the use category of "gas stations and service stations" was ten spaces for each service bay. 1973 Zoning Ordinance, § 6523.

The area exempted from providing off-street parking was defined in the 1973 Zoning Ordinance, § 6523(F),[4] as the area bounded by Winooski Avenue, Main Street, Pine Street, and Pearl Street; that is, not including the subject property. Thus, as of the adoption of the 1973 ordinance, the property was required to provide thirty spaces for the gasoline service station use. Material facts may be in dispute, or at least have not been provided in connection with these motions, as to the total number of parking spaces on the property in 1973;[5] the hours of operation of the service station use at that time; whether Gulf Oil rented out any parking spaces on the property unrelated to the service station use; and, if so, the number of spaces, and whether they were rented out during daytime or overnight hours, or on an ad hoc basis during downtown events. The property may have become nonconforming as of the adoption of the 1973 ordinance unless it provided thirty parking

_____

40, while the application for COA#83-077 to the Planning Commission states the zoning district as R[esidential]-6.

[4] Within § 6523 relating to off-street parking, subsection G stated in full that: "Innerfire District Provisions to Remain in Effect." Neither party has addressed this reference or provided any evidence from City personnel as to the "Innerfire" district or whether it relates in any way to the former exemption for the Inner Business District discussed in the text at footnote 2, above, with regard to the 1962 Zoning Ordinance.

[5] Mr. Walter Simendinger's testimony at the 1983 ZBA hearing reflected that "twenty-five to thirty cars" parked on the site ten years later, in 1983. There is no indication as to whether those numbers included the spaces at the pump islands or the area inside the three service bays.

spaces. Even if there were thirty spaces, and if some of them were also being separately rented out as a "parking facility," which was a permitted use in the district under § 6510(A)(3), the property may also have become nonconforming for lack of a zoning permit for the parking facility permitted use, as well as lack of approval of the reduction or waiver provided under § 6523(E).

In 1975 Gulf Oil obtained zoning approval for the replacement of a conduit line and for new paving, as shown on the list of prior zoning actions for the property in the 2007 parking permit denial. No site plan or other indication of the then-existing parking has been provided to the Court.

Wesco, Inc., acquired the property from Gulf Oil in two quitclaim deeds in March of 1983, subject to a covenant preserving the then-current operator of the gas station as the franchisee. The affidavit of Mr. David Simendinger, who is familiar with Appellant's operation of the property, asserts that Appellant continued Gulf Oil's practice of leasing and renting parking spaces on the site and that parking on the site was "always sufficient" to accommodate the gas station's customers. The hours of operation of the service station use were 6 a.m. to 11 p.m. Material facts may be in dispute, or at least have not been provided in connection with these motions, as to the hours and days of the week that the repair service station was in operation (as opposed to the hours of the gasoline filling station); as to the number of parking spaces rented out on the property unrelated to the repair service station or gasoline filling station uses, and whether they were rented out during daytime and/or overnight hours, and/or on an ad hoc basis during downtown events.

Later in 1983, Appellant's related principal Mr. Walter Simendinger applied to the ZBA for a conditional use permit "to convert the existing gas station/service station use to a combination gas station/mini-mart. No additional lot coverage. No exterior modifications." The "existing use" of the property was described in the application as "gas

7

station."  Appellant also applied in 1983 to the Planning Commission for site plan approval (Certificate of Appropriateness) for "Interior and exterior renovations to establish a new retail use.  No additional lot coverage."  On this application, the "existing use" of the property was described as "Automobile Service Station."

Prior to this proposal, the parking areas on the property appear to have been undefined by painted lines (as the minutes show that the City Traffic Engineer suggested that Applicant paint or "line the parking spaces.").  The 1983 site plan application states that at that time there were twenty existing parking spaces[6] on the property, that fifteen spaces were required for the proposed use, and that fifteen were proposed to be provided.  The initial version of the associated site plan shows a total of fifteen marked spaces, not including at least four additional spaces at the pump islands.  As of a 1975 zoning ordinance amendment, site plan approval by the then-Planning Commission required a determination of, among other things, the adequacy of parking.

Section 6523 of the 1973 Zoning Ordinance required one parking space for each one hundred square feet of "retail floor area."  Wesco argues that the retail floor space of the proposed convenience store at that time was only about nine hundred square feet, and that therefore only nine spaces were required under the ordinance for the new convenience store use.  The site plan associated with the 1983 applications showed the total building area as 1920 square feet, of which 1136 square feet is the area shown under the category of "patrons" for the delicatessen and the 'mart' taken together.  An additional 174 square feet is allocated to the toilet rooms. Material facts are in dispute as to whether the "retail floor space," as that term is used in the 1973 ordinance,  is the equivalent of the "patron" space

---

[6]  The existing use required thirty spaces under the edition of the 1973 Zoning Ordinance provided to the Court.  As the spaces were not striped, material facts remain in dispute as to whether this was an estimate or whether the additional required spaces were in fact provided on site including the areas inside the garage and at the pump islands.

8

as shown on the site plan, which would require something between eleven and fourteen parking spaces, depending on how the floor area within the coolers and the floor area in the public restrooms is or is not counted, as well as on the method used for rounding off numbers in such calculations. Material facts are therefore in dispute as to the derivation of fifteen spaces as being "required" or as being "provided" in the 1983 site plan application. The materials related to the 1983 proceedings that have been provided to the Court do not reflect that any waiver of any then-required parking spaces was required, was applied for, or was ruled on.

After providing the additional landscaping shown by the third of the 1983 site plans, that site plan reflected that Appellant proposed to provide fourteen marked parking spaces (numbered 2 through 15), plus[7] at least four spaces at the pump islands. The third site plan showed five marked spaces located along the western side of the property, five marked spaces located along the eastern side of the property, and four marked spaces located to the west of the building along the southern side of the property. There is no dispute that neither 1983 application mentioned the use of any of those parking spaces to be rented out separately from their use for the convenience-store-with-gasoline-sales. The hours of operation for the convenience store were proposed to be from 6 a.m. to midnight.

The ZBA minutes from July 19, 1983 reflect that Appellant's principal Mr. Walter Simendinger testified on behalf of the applicant that "the proposal will lessen the demand for on-site parking," and that prior to the proposal "between twenty-five and thirty cars park on the site." The architect for the project stated that "the site will be better organized. The parking requirements have been met . . . ." At the July 19, 1983 hearing, the ZBA voted

---

[7] The 2007 DRB decision on the private parking lot use application states that "there are only 15 parking spaces on[]site, including 4 for the gasoline pump islands." (Emphasis added.) The 2002 site diagram had shown fifteen parking spaces as well as the space at the gasoline pump islands.

9

to grant the change-of-use conditional use permit, finding the standards to have been met, including that "all bylaws have been addressed."

After receiving the change-of-use conditional use approval from the ZBA, Appellant's application was referred to the then-Planning Commission for site plan approval. No Planning Commission minutes or decision from 1983 have been provided to the Court in connection with the present motions. After approval by the Planning Commission, Appellant's zoning permit was approved on September 22, 1983.

Zoning applications for the property between 1988 and 2002 (listed in the DRB decision on appeal in Docket No. 197-9-07 Vtec) involved applications for a canopy and for signs or changes to the signs at the site. Material facts are in dispute or at least have not been provided to the Court as to whether any of these proceedings involved site plans showing the configuration of the parking spaces at the site, and as to whether any zoning ordinance amendments were adopted during this time period. None of the applications or the minutes of the proceedings has been provided to the Court in connection with the present motions. Neither party asserts that these applications or proceedings mentioned the issue of parking spaces, either in the context of the spaces required for the convenience-store-with-gasoline-sales use of the site or in the context of the spaces' use as rental parking spaces.

2002 Application

In 2002, Appellant applied for DRB approval of a change in the convenience store to add a 4-table (16-seat) seating area within the building. The application included a site diagram showing fifteen existing parking spaces in a somewhat different configuration than those shown on the 1983 site plans: four spaces located along the western side of the property, five spaces located along the eastern side of the property, and six marked spaces located to the west of the building along the southern side of the property.

No changes in the configuration of parking spaces were proposed in connection with

10

the application to add the seating area. The application was analyzed as a change from one non-conforming use to another,[8] described in Paragraph I of the 2002 DRB decision as requiring conditional use approval and an additional finding that the new use is "less harmful or detrimental to the neighborhood than the existing non-conforming use."

In the section of its analysis regarding parking, the DRB determined that the 153 square feet attributed to the new seating area would be deducted from the square footage attributed to the convenience store use. As the proposed sixteen seats area would require an additional four parking spaces, but the convenience store use would require two fewer spaces, the DRB determined that the proposal would require a net increase of two parking spaces. As no additional parking was proposed, the DRB assumed that a waiver of these two parking spaces would be needed in order to approve the application. It proceeded to grant the two-space parking waiver because of the store's close proximity to the pedestrian-oriented central business district and Church Street Marketplace, as well as the dual use by customers using the gas pumps and the convenience store in the same trip as their use of the deli seating.

Under the 2005 Zoning Ordinance

In 2006, Appellant again sought approval of a canopy over the existing gas pumps. The 2006 application states both the existing number of parking spaces and the proposed number of parking spaces as twelve. Material facts are in dispute, or at least have not been provided to the Court in connection with the present motion, as to what zoning ordinance

---

[8] The parties have not provided facts to the Court to establish what ordinance amendment made the convenience-store-with-gasoline-sales use a nonconforming use in this location, or to establish what ordinance was in effect as of the 2002 application. The 2002 DRB decision on the seating simply states that "the convenience store/deli is not permitted in the DH district and constitutes a non-conforming use." It does not state that the amount of parking allocated to it was nonconforming under the ordinance applicable in 2002..

11

was applicable to this application, as to whether a site plan was prepared for this application, as to whether the twelve existing or proposed spaces for the convenience-store-with-gas-pumps included any of the spaces at the pump islands, and as to whether (by reducing the reported number of "existing" spaces from fifteen to twelve) Appellant was attempting to reserve any other existing spaces for the rental parking space use.

During the July 18, 2006 DRB hearing on the canopy application, a representative of the City's Department of Public Works stated the department's concern to protect the public from vehicles cutting through the site (presumably from South Winooski Avenue, to avoid waiting at the Main Street light). The department's representative mentioned that "on the west side there are leased parking spaces and maybe more of these spaces could be used," which prompted a discussion of leased parking spaces on the site. Appellant's representative stated that four spaces on the west side of the property are leased, and also that "[p]eople can come to our lot and rent spaces." Appellant's practice of leasing parking spaces and of offering spaces on an as-available basis during downtown evening events was also mentioned in the course of an Environmental Court hearing on the canopy application, although no findings were made by the Court as the case was resolved by agreement.

On March 8, 2007, the Code Enforcement Officer of the City of Burlington issued a Notice of Violation to Appellant for "operating a private parking lot without zoning approval" at 211-219 Main Street. The description of the violation in the Notice of Violation referred to attached photographs, which showed cars parked on the property and showed a sign in the window of the building advertising "PARKING $5.00 Until Midnight – Please Pay Inside – Violators will be towed." The details provided in the Notice of Violation also stated that vehicles found on the site bore a "parking sticker," but did not include any further description or photograph of the parking sticker connecting it with this site.

The Notice of Violation advised that the violation could be remedied by either

"removing the violation, [and] restoring the premises to its prior state," or "applying for a zoning permit," or "entering into a Stipulation Agreement with the City to extend deadlines in which to come into compliance." The Notice of Violation also informed Appellant of its appeal rights.

Appellant appealed the Notice of Violation to the DRB and appealed the DRB's decision to this Court in Docket No. 106-5-07 Vtec; Appellant also applied for a zoning permit for the "private parking" use and appealed the denial of that application to this Court in Docket No. 197-9-07 Vtec. In addition, the City filed an enforcement complaint under 24 V.S.A. §§ 4451 and 4452 seeking injunctive relief and monetary penalties in Docket No. 177-8-07 Vtec; the materials filed with the complaint included photographs of parking stickers affixed to the windows of cars parked on the site at specified times.

Preexisting Nonconforming Parking Uses

Appellant has moved for summary judgment that the private parking use that is the basis of the Notice of Violation is a preexisting nonconforming use not subject to the requirements of the 2005 Ordinance, and for which a permit is either not required or should be issued as a matter of law. Appellant argues that it has simply continued a practice of renting out private parking spaces begun prior to the adoption of zoning by Gulf Oil, the former owner.

In order to determine whether a landowner has the right to continue a nonconforming use, it is necessary first to determine when the use was lawful,[9] and then to determine which amendment to the zoning ordinance made the use nonconforming and

---

[9] If a use was not lawful prior to the change in zoning regulations, a nonconforming use is merely an illegality that may be subject to enforcement proceedings. Huntington NOV Appeal, Docket Nos. 204-8-06 Vtec and 209-9-06 Vtec, slip op. at 6 (Vt. Envtl. Ct. Apr. 25, 2007).

13

what was the extent or level of the use at that time. <u>Franklin County v. City of St. Albans</u>, 154 Vt. 327, 331 (1990); <u>In re Appeal of Smith</u>, Docket No. 263-12-02 Vtec (Vt. Envtl. Ct. Dec. 20, 2004), aff'd 2006 VT 33.

As shown in the sequence of ordinances, activities on the property, and permit applications described above, material facts are in dispute as to the level and extent of the parking space rental use, if any, on the property at various points in the history of the property, and are also in dispute as to the number of spaces provided for all the uses on the property at the time of the 1983 application to convert the building to convenience store use. Without being able to determine when or whether the property ever became nonconforming as to the number of parking spaces required for the convenience-store-and-deli-with-gasoline-service uses, and whether any waivers have been granted in the past, the Court cannot make any determinations about whether any parking capacity remains on the lot for rental parking, with or without a waiver. Accordingly, summary judgment must be DENIED as to Docket No. 197-9-07 Vtec, as material facts are in dispute.

The City is correct that the use of some of the parking spaces on the lot for rental parking should have been disclosed[10] as an additional use on the site, even if it was claimed to be a preexisting nonconforming use, as of the time of the 1983 application for the mini-mart and the 2002 application for the deli, as both of those applications were required to analyze the amount of parking provided on the site for the uses on the site. <u>In re Appeal of Smith</u>, <u>supra</u>. The analysis of the adequacy of parking on the site for the proposed uses cannot be done without understanding all the demands on the parking at the site. The Court cannot determine from the materials whether the fifteen spaces proposed for the mini-mart use or the twelve spaces proposed at the time of the canopy application left any

---

[10] The pages of the applications provided to the Court in connection with these motions do not contain any statement certifying their correctness or providing that misrepresentations will void the application.

other spaces on the property available for the rental parking use.

Appellant is entitled to apply for a permit to use some of the parking on the property for rental parking, and/or to apply for up to a total waiver[11] of up to 50% of the spaces otherwise allocated to all the uses on the property. But even though the rental of parking spaces (a "private parking lot" use) is a permitted use in this zoning district, it still requires a zoning permit and a demonstration that the use will not cause the property to become nonconforming as to the number of parking spaces required to be provided for the other uses on the property. After the 1983 application, however, and certainly as of the 2002 application, Appellant was not entitled to continue to rent out such spaces without obtaining a zoning permit for that additional use. To that extent, summary judgment is GRANTED in favor of the City as to the existence of the violation (rental parking use without a permit).

Notice of Violation

Appellant challenges the Notice of Violation on due process grounds, arguing that the Notice failed to sufficiently notify Appellant of the alleged violations. To comport with due process requirements, notices of violation must "state the facts that support the finding of a violation, the action that the [zoning authority] intends to take, and information on how to challenge the notice [of violation.]" Town of Randolph v. Estate of White, 166 Vt. 280, 285 (1997).

In the present case, the Notice of Violation contains a statement entitled "Notice of Violation Details" that outlines the discovery of cars parked on the property bearing a "parking sticker," and photographs of the signs and parked cars alleged to constitute the

---

[11] The Court has not been informed as to the parking space requirements or the parking waiver provisions, if any, available under the more recent zoning amendments; this reference is to the 2005 Zoning Ordinance.

15

violation. The Notice also explains that Appellant may be subject to fines and includes a statement of how to challenge the violation, as well as reference to the applicable zoning regulations. Despite the fact that the "remedies" section is general, the Notice taken together with its attachments provided Appellant sufficient notice to satisfy due process.

Accordingly, summary judgment is DENIED to Appellant and is GRANTED to the City as to the adequacy of the Notice of Violation.


Statute of Limitations

Appellant argues that the fifteen-year statute of limitations contained within 24 V.S.A. § 4454(a) prohibits the issuance of the Notice of Violation.

As this Court explained in City of Burlington v. Richardson, Docket No. 188-10-03 Vtec, slip op. at 11–12 (Vt. Envtl. Ct. June 27, 2006), the statute of limitations was adopted in response to the Vermont Supreme Court's decision in Bianchi v. Lorenz, 166 Vt. 555 (1997). It provides a fifteen-year statute of limitations "from the date the alleged violation first occurred," for enforcement proceedings brought under 24 V.S.A. §§ 4451 and 4452 "relating to the failure to obtain or comply with the terms and conditions of any required municipal land use permit." As the complaint in Docket No. 177-8-07 Vtec is brought under 24 V.S.A. §§ 4451 and 4452, this statute of limitations operates to bar the assessment of fines and the imposition of injunctive relief for construction violations that were built or installed more than fifteen years earlier than the filing of the complaint in August of 2007, that is, earlier than August of 1992, and for use violations during any period earlier than August of 1992. This distinction between use violations and construction violations is rooted in sound public policy, as explained in City of Burlington v. Richardson, supra:

> [The statute of limitations] would not operate to bar enforcement under those sections for use violations during the [fifteen-year period] to the present, even if they began earlier than [the fifteen-year period], because use violations are analyzed as continuing or recurring violations. See City of St.

Albans v. Hayford, Docket No. 161-9-03 Vtec (Vt. Env[tl]Ct., June 1, 2004), and cases cited therein. Property owners cannot initiate a new nonconforming use in violation of the municipal zoning ordinance and acquire a vested right to its continuation, as one goal of zoning is to phase out nonconforming uses. In re Gregoire, 170 Vt. 556, 558 (1999); and see In re Appeal of Richards, 2005 VT 23, ¶6. To rule otherwise would create an incentive for property owners to make clandestine changes from an approved use to an illegal use, in hopes of obtaining the right to continue the clandestine illegal use by the passage of time. 24 V.S.A. §4496 (now §4454) limits the period for searching for defects in title due to hidden zoning violations to the same period applicable to searching for other title defects; it does not authorize the creation of new nonconforming uses.

Appellant argues that parking is treated as a structural or dimensional attribute of development proposals, and therefore should be treated as a construction violation rather than as a use violation for the purposes of the statute of limitations in the present case, citing In re Appeal of McGrew, Docket No. 199-10-04 Vtec (Vt. Envtl. Ct. Mar. 3, 2006); Appeal of Bone Mountain, Docket No. 114-6-04 Vtec (Vt. Envtl. Ct. May 11, 2005), and In re Appeal of Hehir, 130-6-00 Vtec (Vt. Envtl. Ct. Dec. 28, 2001, aff'd Docket No. 2002-064 (Vt. Sept. 25, 2002) (unpublished three-justice decision).

It is true that the number of parking spaces required for a particular development proposal, like required setbacks or height, is a structural or dimensional attribute of that development proposal. But the violation asserted in the notice of violation and the complaint in the present case does not allege a failure to maintain on the site the number of parking spaces required for either of the uses on the property conducted under properly issued permits:[12] the convenience-store-with-gasoline-sales use, or the deli-seating use. Rather, the asserted violation is the failure to obtain a permit to conduct a third use on the

---

[12] In any event, an enforcement action to enforce decisions of a municipal panel in issuing conditional use or site plan approval brought under 24 V.S.A. § 4470(b) would not be subject to the 24 V.S.A. § 4454(a) statute of limitations.

17

property: the rental of parking spaces. Its filing is not barred by 24 V.S.A. § 4454(a), although that section limits penalties to that attributable to the fifteen-year period.

Therefore, with respect to the applicability and effect of the statute of limitations, summary judgment is DENIED to Appellant and is GRANTED to the City.

Accordingly, it is hereby ORDERED and ADJUDGED that Summary Judgment is GRANTED in PART as described in more detail above, and is otherwise DENIED as material facts are in dispute.

An in-person conference has been scheduled for March 21, 2008 (see enclosed notice) at the Costello Courthouse in Burlington, to enable the parties to bring any documents they may wish to discuss with the Court, including, if necessary, the new zoning ordinance. Please be prepared to discuss the extent to which the material facts identified in this decision as not having been provided are in fact disputed, and to discuss the scheduling of the remaining issues for trial (including the parties and witnesses' unavailable dates for July, August and September). With respect to the application for the rental parking use, also please be prepared to discuss whether Appellant's application for fifteen spaces of rental parking puts before the Court the potential for approval of fewer than fifteen spaces, or whether any such lesser-included request would require remand to the DRB.

Done at Berlin, Vermont, this 6th day of March, 2008.

_____
Merideth Wright
Environmental Judge

18